[No. 4241.]

DOLL v. STEWART.

**1. Change of Venue—Discretion of Court.**

An application for change of venue on the ground of the prejudice of the judge, or the prejudice of the inhabitants, or of the undue influence of the adverse party over the minds of the inhabitants, is within the discretion of the trial court to grant or refuse, and unless there is a manifest abuse of such discretion, the action of the trial court in refusing such application is not reviewable.

**2. Change of Venue—Prejudice of Judge—Second Trial.**

The fact that a judge has once before tried a cause without a jury and rendered a judgment against the party who applies for a change of venue, is not sufficient to establish prejudice of the judge and to require a change of venue on that ground.

**3. Change of Venue—Prejudice of the Inhabitants.**

Where an application for a change of venue on the ground of prejudice of the inhabitants of the county was supported by the affidavits of the applicant and six residents of the county, and counter affidavits were filed of ten citizens of the county who stated that they had never heard of the controversy between the parties and denied that the inhabitants of the county were prejudiced, it was not an abuse of discretion of the trial court to deny the application.

**4. Continuance—Discretion of Court.**

Applications for continuance are addressed to the discretion of the trial courts and their rulings thereon are not reviewable except in cases where there appears to have been an abuse of discretion.

**5. Same—Absence of Material Witness.**

It is not an abuse of discretion to deny an application for continuance on the ground of the absence of a material witness where there is no showing that the witness will probably be present at the next term of court if the cause is continued.

**6. Contracts—Public Lands—Public Policy.**

A contract to convey land made before the issuance of a patent therefor by the United States government, but after final proof has been made and the land entered and paid for in the United States land office, is not illegal as in violation of the laws of the United States.

**7. Conveyances—Possession and Improvement—Notice.**

Defendant entered into possesison of land under an agreement to convey from the entryman, paid the consideration there-

for, and continued to occupy said land and made valuable improvements thereon. The entryman went to work at plaintiff's ranch and subsequently deeded the land to plaintiff. Plaintiff and defendant knew each other and lived in the same neighborhood and the plaintiff knew that defendant was in possession of the land and making improvements thereon when he took his deed. There was evidence that defendant having heard that plaintiff was about to buy the land sent him word that if he did so he would kill him. Held that the facts were sufficient to put the plaintiff upon inquiry and that he purchased with notice of the claim of defendant to the property.

*Appeal from the District Court of Eagle County.*

Mr. CHAS. K. PHILLIPS, for appellant.

Mr. L. R. THOMAS and Mr. T. A. DICKSON, for appellee.

Mr. JUSTICE STEELE delivered the opinion of the court.

Suit was brought by the appellant (plaintiff below) to recover the possession of certain lands claimed by him and which he alleges the defendant, without right or title, did enter and oust and eject him from, and for damages in the sum of $1,500.00, and for the rents and profits of said land while he has been excluded therefrom.

The defendant in his answer admitted that the plaintiff had purchased the property from R. M. Southwick on the 10th of October, 1897, and that the patent of the United States had issued to said Southwick for said lands on the 10th of April, and was duly recorded on the 1st of July, 1897; he denies that he did enter into or upon said lands or any part thereof and oust or eject the plaintiff therefrom; denies that he has withheld or still withholds the possession of said lands from the plaintiff. And for a cross-complaint and counter-claim, alleges that in November, 1896, said Southwick made final proof

and duly entered and paid for said land in the United States land office at Glenwood Springs; and further, that in the month of January, 1897, he, the defendant, made and entered into a contract with the said Southwick to purchase the said lands for the sum of five hundred dollars, whereby the said Southwick sold the said lands to him for the said sum, and thereupon said defendant, under and pursuant to said contract and agreement, entered into the possession and occupancy of said lands and has expended thereon, in labor and improvements, large sums of money; that the said defendant and his family have resided on said lands ever since January, 1897, and defendant has been in the actual, open and notorious possession of said lands and has made permanent, lasting and valuable improvements thereon, under and pursuant to said contract; that the plaintiff well knew all of said facts at the time and long prior to his pretended purchase of said lands from said Southwick. That prior to the 10th of October, 1897, the said defendant demanded from said Southwick a deed conveying said lands to him, but that said Southwick failed and refused to make said deed; that the said plaintiff conspired and confederated with the said Southwick to cheat and defraud the defendant out of his rights in said premises and to deprive him thereof, and did procure from said Southwick a conveyance of said lands, but took said deed subject to the rights and equitable title of the defendant: and praying that the equitable title to the land aforesaid be adjudged and decreed to be in the defendant, and that he is entitled to a conveyance of the legal title now standing in the name of the plaintiff, and that the plaintiff be decreed to make, execute and deliver to the defendant a good and sufficient deed of said premises.

The replication of the plaintiff denies the allegations of new matter and each and every allegation

contained in the cross-complaint and counter-claim.

On April 4, 1899, the cause was tried by the court, and judgment was rendered in favor of the defendant. On the 25th of April, 1899, plaintiff paid all costs and moved for a new trial under sec. 272 of the code. On June 5, 1899, the motion for a new trial was granted. On July 22, 1899, plaintiff filed his motion for change of venue, supported by affidavits. Counter affidavits were filed on the 17th of October, 1899. The motion for change of venue was heard before the judge of the district court at chambers in Leadville, and was denied. On April 9, 1900, the cause was set for trial for the 4th of June, 1900. On the 4th of June, 1900, motion for a continuance, supported by affidavits, was made by the plaintiff; and upon said day the motion was denied and the cause was tried to the court, a jury being expressly waived by both the said parties, and the court rendered judgment in favor of the defendant.

To the refusal of the court to change the venue of the cause, to the order of the court overruling the motion for a continuance, and to the judgment of the court, the plaintiff excepted.

The cause is brought here upon appeal by the plaintiff, and he assigns as error the overruling of the motion for change of venue, the overruling of the motion for continuance, and the rendering of judgment in favor of the defendant, because it is against the law and against the evidence and should have been rendered in favor of the plaintiff.

The motion for change of venue is based upon the ground, first, that the plaintiff fears he will not have and receive a fair trial in the district court of Eagle county, on account of the prejudice of the judge of said court; second, because the defendant has an undue influence over the minds of the inhabitants of said Eagle county; and third, because the inhabi-

tants of said Eagle county are prejudiced against the
plaintiff so that he cannot and does not expect a fair
trial of this case within said Eagle county. This
motion was supported by the affidavit of the plaintiff,
in which he sets forth that the judge of said court is
prejudiced against him for the reason that the cause
had already been once tried and determined on the
merits before the judge of said court without a jury,
that upon such trial a direct and very positive con-
flict of testimony occurred, and that, notwithstanding
the sworn testimony of the plaintiff, the judge of said
court adopted the statements of witnesses who con-
tradicted the plaintiff in the essential and vital facts,
and found against the plaintiff, and rendered judg-
ment for the defendant; and that affiant is therefore
compelled to believe and does believe that the judge
of said court has no confidence in the credibility of
plaintiff, and that upon a second trial of this case
such lack of confidence must influence the mind of
said judge to the material prejudice and injury of
plaintiff. In support of his statement that the said
defendant has an undue influence over the minds of
the inhabitants of said Eagle county, the plaintiff, in
his affidavit, alleged, among other things, that the
defendant has been in possession of the lands in con-
troversy for a great number of years, that he has
made the same a home for himself and his family
during such period, and has obstinately refused to
surrender possession thereof, and that public senti-
ment, overlooking the right of the matter, has been
very strongly exhibited in favor of the defendant, and
has been studiously cultivated by the defendant as an
"old-timer" in said county and in many other ingen-
ious ways, by reason whereof the inhabitants of said
county have placed great faith in the right of the
said defendant to have and maintain possession of
said lands. That the mere continuous residence of

the defendant upon said lands, and the raising of his family of several children thereon, have operated to influence public opinion strongly in his favor, and have thus given him an undue influence over the minds of the inhabitants of said Eagle county in this controversy, which, the affiant avers, is a matter of great notoriety and public interest in said county.

The affidavit of the plaintiff is supported by the affidavit of six persons who are residents of Eagle county, who aver that the facts stated in the affidavit of the plaintiff are true. Counter affidavits were filed by ten persons, who aver that they have resided in Eagle county for ten years past and that they had never heard the merits of the controversy discussed; that it is not true that the inhabitants are prejudiced against the plaintiff, and that hundreds of men could be found that never heard of the cause and who could act as jurors, and that no reason existed why a fair and impartial trial could not be had in Eagle county.

The affidavit for continuance alleges that plaintiff cannot safely go to trial at the June term of the court, on account of the absence of Randolph M. Southwick and A. E. Mulkey, who are material witnesses for the plaintiff; and further alleges that in the month of September, 1899, the said witness Southwick resided in the state of Utah, and that in May, 1899, the plaintiff met the said witness in the state of Utah and discussed with him the facts in the controversy pending in this action; that the said Southwick then stated that he was about to go prospecting, and would be gone from said place in the state of Utah until some time in September or October, 1899; that upon his return to said town he would attend before any commissioner appointed by the court, for the purpose of giving his deposition; that plaintiff thereupon asked the said witness to make affidavit to the facts in this

case, in order that the proper written interrogatories might be prepared and be attached to the commission which might issue with the same, and that in pursuance of such request the said Southwick made and subscribed his affidavit.

The affidavit of said Southwick, made before a notary public, sets forth facts connected with the title to said property, and generally denies the allegations of the defendant's cross-complaint and counter-claim, and proceeds also to deny the statements made by said defendant at the former trial of the cause,—the affiant stating that the substance of the defendant's testimony had been read to him. The plaintiff, in his affidavit filed in support of his motion for a continuance, recites that in the month of October, 1899, he caused a dedimus to issue directed to George E. Lee, a notary public residing in the state of Utah, commanding him to take the testimony of said Southwick; that attached to said dedimus were a great number of interrogatories, but that said commission has never been returned, nor has any deposition been taken in pursuance thereof, for the reason that the said Southwick had departed from said place in the state of Utah and had not yet returned thereto. That during the month of March, 1900, he, the plaintiff, caused an advertisement to be published in the Bingham Bulletin, a newspaper of general circulation in the county of Salt Lake and state of Utah, being the place of the last known residence of said Southwick, and that the same was duly published for four consecutive weeks; by which advertisement plaintiff, by his attorneys, offered a reward for the postal address of the said Southwick. That no answers were ever received to such public advertisement. That said Southwick, if personally present at the trial of this cause, or if his deposition can be obtained and produced upon the trial, will testify that no agreement

.of sale or purchase of the lands described .in the .complaint was ever at any time entered into. by. the said .Southwick .or any .other person for him.. .    ..;

.    . The plaintiff .states in his affidavit. that the witness A. E. Mulkey is a .material witness for him, .and .that he' will prove by said Mulkey that the said defendant, Stewart, told said Mulkey that the lands described in the complaint were entered and proved up by Southwick under an agreement that Southwick would convey them to the said Jack Stewart after final proof.    That a subpœna for said Mulkey was placed in the hands of the sheriff of Teller county on the 8th of May, 1900, and that said subpœna has not been returned; and the plaintiff alleges that he believes that if said cause is continued for this term of court, he will be able to have the witnesses present at the next term thereof.

It is within the discretion of the trial judge to grant or refuse applications for change of place of trial, and unless there is a manifest abuse of such discretionary power, the action of the trial court in refusing such application is not reviewable. *Power v. People*, 17 Colo., 178; *Michael v. Mills,* 22 Colo., 439.

A judge is not disqualified to sit in the second trial of a cause in cases where the law grants to a party a new trial; and it cannot be ground for an application for a change of venue upon the ground of prejudice of the judge, that he has tried the case before, without the aid of a jury, and has rendered judgment 'against the party who applies for the change of venue.

· We cannot say that there was an abuse of discretion on the part of the court in refusing the motion for change of venue upon the ground that the inhabitants of the county were prejudiced against the defendant.  Counter. affidavits were. filed .by. ten citi-

zens of Eagle county. They stated that they had never heard of the controversy between the parties, and it is reasonable to suppose that there were many other persons within the limits of the county who would be competent to serve as jurors.

Applications for continuance are also addressed to the discretion of the court, and are reviewable except in cases where there appears to have been an abuse of the discretion. It does not appear that the trial judge abused his discretion in this instance in refusing to grant a continuance. It appears from the affidavit of the plaintiff that the witness Southwick was not to be found in the state of Utah, and that after advertisement in a newspaper published at his last known residence no trace of him was found. An application for a continuance upon the ground of absence of a material witness should be refused unless it appears that there is some probability that the witness will be present at the next term of court. This did not appear, and the court was not required to postpone the case under the facts as they appeared to exist. The witness Southwick was not called as a witness at the first trial, and although his residence was known and his affidavit taken some time before the last trial, no effort appears to have been made to take his deposition at a time when he was within reach of the process of the court. The witness Mulkey, who, plaintiff was informed, resided at Cripple Creek, was not found by the sheriff of Teller county, although subpœna was placed in his hands on the 8th day of May, 1900, and the trial of the cause did not occur until the 4th of June, 1900; and there was no statement in the affidavit which would warrant the court in finding that if a continuance were granted, the attendance of the witness Mulkey could be procured at the next term of the court. We are of opinion, therefore, that the motion for change of venue

and the application for a continuance were not improperly denied and overruled.

The plaintiff insists that the testimony shows that the defendant and Southwick entered into an illegal contract by the terms of which Southwick was to make final proof for the land in controversy, and, after the making of such final proof, make a conveyance of the property to the defendant; and that such contract, being in violation of the laws of the United States, should not be enforced. This court has held that such contracts can not be enforced, and that the court will decline to relieve parties who enter into any such contract, because the same is in violation of the Laws of the United States (*Brown v. Kennedy,* 12 Colo., 233; *Everett v. Todd,* 19 Colo., 322); but the testimony does not disclose any such agreement. The defendant does not claim it, and the affidavit of the entryman filed with the application for continuance does not disclose it. The contract set forth in the pleadings and established by the evidence is that Southwick, in consideration of the sum of about five hundred dollars, paid partly in cash and partly in live stock furnished and board and lodging supplied, agreed to convey to the defendant the land in controversy; that immediately after this agreement was made, Southwick left the ranch and that Stewart entered into the sole possession thereof, with his family, and made valuable and permanent improvements upon the land. The testimony shows that the plaintiff and the defendant were acquainted with each other and lived in the same neighborhood, that the defendant frequently passed the plaintiff's place, and that Southwick was working on the ranch of the plaintiff when the deed was executed. The plaintiff, therefore, knew at that time that the defendant was in the possession of the land, that he was making improvements thereon, and that the person from whom

he procured the deed was not in possession of the land. A witness testified that Stewart, having heard rumors that Southwick intended to evade his contract, sent word to Doll that he would kill him if he purchased the land. Other witnesses testified that Southwick, when approached upon the subject of making a conveyance of the property, drove the witnesses away, using a loaded Winchester rifle for that purpose, and at the same time stating that he had already executed a deed to the wife of the defendant. These facts appearing upon the trial we think were sufficient to warrant the court in finding that the plaintiff had knowledge of the claim of the defendant to the property, and as a matter of law these facts were sufficient to place the plaintiff upon inquiry.

We are therefore of opinion that the judgment of the district court should be affirmed, and it is accordingly done.   *Affirmed.*