[No. 6739.]

NORDLOH v. PACKARD.

1. **Change of Venue—Discretionary**—Party is not entitled, as matter of right, to a change of the venue on account of the prejudice of the judge; the matter lies in the sound discretion of the judge.—(519)

2. **Election Contest**—When the contestee alleges that after the ballots had been counted, and the boxes delivered to the county clerk, persons acting in the interest of the contestor, had tampered with the ballot boxes, and changed the ballots so as to make any count of them, as prayed, falsely conform to the contestor's statement; and it appears that the judge himself, after the contest begun, took the ballot boxes from the clerk, and retained possession of them until opened upon the hearing, it was held that the action of the judge in denying the change of venue, and proceeding with the trial, against the objections of the contestor, was an abuse of discretion, requiring a reversal of the judgment; that even though his term of office was about to expire, he should have commenced the trial and turned it over to a successor. He should not have pronounced judgment.— (519-522)

3. Election Contest—Judge's Term Expiring—Where, as required by statute, the trial in an election contest is commenced within twenty days after issue joined, and is continued until the judge's term expires, his successor may proceed. The trial must begin de novo.—(522)

4. Judgment—Election Contest—Suspending Execution—No court can, after a lapse of the term, suspend the execution of a judgment. Even during the term at which an election contest is determined, the court has no power to suspend execution of a judgment which awards the office to the contestor.—(522, 523)

*Appeal from Adams County Court*—Hon. H. H. GUTHEIL, Judge.

Mr. GEO. ALLEN SMITH, and Mr. B. E. WOODWARD, for appellant.

Mr. JAMES H. BROWN, and Mr. HARRIE M. HUMPHREY, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

At the general election in November, 1908, Henry Nordloh and Albert H. Packard were opposing candidates for election to the office of county commissioner of Adams county. The count of the official returns of the election officers, made by the county canvassing board, gave Nordloh 182 majority; and thereupon the certificate of election was issued and delivered to him. Packard being dissatisfied, instituted this contest in the county court against Nordloh, and in the written statement which our special statute requires, alleged, in legal effect, that if the election had been honestly conducted and the votes fairly counted, as they were not, the majority would have been in his favor; but because of various mistakes made and frauds perpetrated by the election officers and others, in conducting the election and counting the vote, he was wrongfully deprived of his majority, and the certificate given to Nordloh. Nordloh filed his answer December 14, 1908, and after denying the

material allegations of the statement and averring that the election was honestly conducted, and the vote correctly counted, alleged that, in case the court in hearing the contest should open the ballot boxes and count the ballots, as contestor had requested, and such count showed a majority in the latter's favor, that result would be due to fraudulent and criminal conduct by persons working in the interests of contestor, who, after the election officers delivered the ballot boxes to the county clerk, their legal custodian, and before the judicial count, if any was made, tampered with and changed the ballots as cast, and first counted to correspond with the allegations of contestor's written statement. After this answer, and the replication thereto, were filed, and the issues made up, counsel for contestee, on December 17th served notice on counsel for contestor that he would make application to the court, and support it with affidavits, to call in another judge to try the case, upon the ground that the presiding judge was prejudiced against contestee. On the day set for its hearing, and in the presence of counsel for contestor, contestee's counsel called the attention of the court to this proposed application, and, as we infer, because of the natural delicacy counsel have in such matters, indicated that he would rather orally suggest the disqualification to the court than formally to file a motion; and added, if the court chose not to act upon the suggestion, the application would be presented in the regular way. Upon an intimation by the court that it would not be necessary to make a formal application, and that he certainly would endeavor to get another judge to try the case, but that if it could not be done, contestee would be advised, so that the formal application could be filed as of that date, contestee withheld the application from the files.

Six days later and on December 23d, counsel for

contestee again called the court's attention to this matter, apparently supposing that final disposition of it had not been made; whereupon the court said that the order for calling in another judge had already been made. After some further conversation between the judge and contestee's counsel, with reference to statements in the supporting affidavits, the truthfulness of which the judge then denied, and upon objection interposed by contestor's counsel to any further discussion or hearing unless the papers were formally filed, the count permitted contestee to file, and he did file, them as of the time when the suggestion concerning the same was first made. The court ended the interview by saying that he would endeavor to get another judge, and was doing so as fast as he could, and hoped to succeed in such endeavor upon the following day. Thereafter and upon the day set for trial, December 29th, counsel for both parties appeared, and the judge remarked that he had made arrangements with an outside judge to be present and try the case, and had supposed that the latter would be present for that purpose, but that only that morning, while counsel were present in court awaiting convening of the court, he had received a message by long distance telephone from the outside judge that he could not come. The presiding judge then stated that since he had failed in his effort to have counsel agree on allowing the contest to go over until his successor took office, there was nothing else for the court to do but to try the contest; and he immediately called the case for trial and ordered counsel to proceed; to all of which contestee duly objected. The trial was begun and evidence heard, and the court, deeming the showing of contestor sufficient therefor, ordered the ballot boxes to be opened, and proceeded to count the ballots, which were taken from the boxes for that purpose, with the

result that instead of a majority of 182 for Nordloh, which the official count by the canvassing board showed, Packard's majority was shown to be 252. The court awarded judgment, canceling contestee's certificate of election, declaring contestor elected, and granting to him a certificate of election; from which contestee has appealed.

A number of errors were assigned, but only two are argued by contestee—the first, that the county judge should not have tried the case; the second, that the judgment was not sustained by the evidence. The second ground will be disregarded and the case will be reversed because the county judge should not have decided the contest.

The special statute, Session Laws 1885, p. 193, which furnishes the special procedure for the trial of contested election cases, has no specific provision for a change of the place of trial, or for an application, such as is made here, for calling in another judge to try a case, upon the ground of prejudice or partiality of the regularly elected and presiding judge. Counsel seem to agree, however, that in the absence from this statute of any such authority, our code of procedure, which does make such provision, should be followed. Under sections 30 and 31 of the code a party has not the absolute right to have his cause tried by a judge other than the regularly elected and presiding judge of the court, on the alleged ground of the latter's prejudice. The matter lies in the sound discretion of the judge to whom the application is made and his decision is not reviewable unless an abuse of discretion is shown.—*People v. District Court,* 30 Colo. 488; *Doll v. Stewart,* 30 Colo. 320. The showing here was, on its face, inadequate, and had the court made an order overruling the application there would be no error, were it not for the matters to which we now refer. The record does not

show that the application was ever formally passed upon, though the court's proceeding with the trial was, perhaps, equivalent to a denial; but the presiding judge unquestionably gave contestee to understand, upon which the latter acted, that he would not sit, and that another judge would be called in to try the case. It was not until the very hour of the hearing that the court announced that another judge could not be obtained, and that the parties must proceed before the court as presided over by the judge to whose sitting objection was made. There is nothing in the record to discredit the judge's statement that he was unable to secure the presence of another judge. By our statute the trial must begin not more than twenty, and not less than ten, days after the joining of issue. Before the alleged disqualification of the judge was suggested by contestee, his answer was on file, in which the issue was squarely made that the ballots were tampered with after they had been counted and deposited in the ballot boxes by the election officers. The evidence is that the ballot boxes and poll books were deposited, as required by law, with the county clerk, where they remained for several days. After this contest was begun, upon an application of contestor and without notice, the court ordered the county clerk to turn over the ballot boxes to the bailiff of the court, and the county judge had the ballot boxes at once thereafter placed in his own vault in the court house, of which he, the judge, had the only key, and he was the only person who had access to, and control over, the place where the ballot boxes were stored. Thereafter and until they were produced and opened, during the progress of the trial, they remained in his custody as county judge, though watchers of both parties were present in an adjoining room to see that they were not molested.

The issue thus presented by the answer made it highly desirable, if not imperative, that the county judge should not preside at the trial of the case, and decide questions of fact which affected the integrity. of the official ballots. The claim of contestee in argument, with some testimony tending to sustain it, that an opportunity for tampering with these ballots was furnished and embraced, and the ballots tampered with either while they were in the custody of the county clerk, or after they were delivered into the custody of the county judge, adds emphasis to the impropriety of the county judge's sitting to pass upon the issues which were involved and whose proper solution depended, in part, upon the integrity of his own official acts as custodian of the ballots. As such issue was in the case, made so by his own act in assuming the duty of a custodian, the judge, of his own motion, should have refused to try the contest, as apparently he did, at one time, and we cannot permit a judgment rendered, under such facts, to stand. True, the few days remaining of the judge's term of office afforded scant opportunity for a prolonged trial, and a further delay on the 23d of December might have prevented its conclusion before his successor's term began. There may be force in contestor's argument that Packard, as a representative of his political party, ought not to have given his consent to a postponement of the hearing, as that might have prevented an organization of the board of county commissioners in the interests of his political party. But these, and all such considerations, are subordinate to an impartial administration of justice, and to those proprieties which courts must observe, not only because it is right they should do so, but in order to retain public respect and secure willing and ready obedience to their judgments. True, the statute is imperative that the hearing shall commence

within a fixed time after joining of issue, but the time of its ending is not limited. And while such cases should be speedily tried and determined, the judge was in error in supposing that failure of counsel to agree to continue the contest until his successor qualified made it essential that he should try and determine it. This court, in *Clanton v. Ryan,* 14 Colo. 419, held that an election contest may be tried notwithstanding a change of county judges after its commencement, though the successor must conduct the trial *de novo.* The county judge in this case, as apparently was his determination in the beginning, ought not to have decided this contest. If, to save the rights of the parties, the trial should have been entered upon December 29th, the court should have ordered the trial then to proceed and thereafter secured, if possible, another judge to try the case *de novo,* before his successor's term began; but if this could not be accomplished, the county judge should not have pronounced final judgment, but should have left the incompleted contest as a legacy for his successor in office.

Wholly without reference to the merits of the case, we have no doubt that this contest should not have been decided by Judge Gutheil, even if it was necessary for him to begin it and turn it over unfinished to his successor.

This record discloses that after final judgment, which included an order setting aside and holding for naught the certificate of election theretofore issued to Nordloh, and granting a certificate of election to Packard, Judge Glass, the successor in office of Judge Gutheil, made an order suspending for a certain period of time the execution of the judgment which granted the certificate of election and awarded the office to Packard. This was manifest error and must be set aside. Even at the same term at which

such judgment was rendered the trial court would not have power to make such an order, and certainly after the adjournment of the term and at a succeeding term of court, such an order is absolutely void. Judgment is reversed, the certificate to Packard canceled, Nordloh's certificate to remain in force and effect until and unless canceled by final judgment, and the cause remanded for a new trial.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MUSSER concur.