173 P.3d 1113 (2007)
The PEOPLE of the State of Colorado, Complainant
v.
Robert Edward GILBERT, Respondent.
No. 06PDJ016.
Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.
June 26, 2007.
*1114 On January 22-24, 2007, a Hearing Board composed of JOHN M. LEBSACK, JERRY D. OTERO, both members of the Bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("PDJ"), held a hearing pursuant to C.R.C.P. 251.18. Kim E. Ikeler and April M. Seekamp appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Frederick P. Bibik appeared on behalf of Robert Edward Gilbert ("Respondent"). The Hearing Board issues the following Opinion and Order Imposing Sanctions based upon the evidence presented by the parties.

OPINION AND ORDER IMPOSING SANCTIONS

I. ISSUE AND SUMMARY

A magistrate must observe high standards of conduct to preserve the integrity of the court. Respondent, a magistrate, made ex parte phone calls to a litigant who had appeared before him in court earlier the same day. During the next court hearing, this litigant told Respondent she felt "uncomfortable" with him presiding over her case. Respondent failed to properly consider her statement and proceeded to hear the case. Did Respondent violate the Colorado Code of Judicial Conduct?
The Hearing Board finds Respondent violated the Colorado Code of Judicial Conduct when he made four ex parte calls to a litigant and when he later failed to consider her request that he recuse himself from her case. The Hearing Board also finds Respondent did not violate Colo. RPC 8.4(d) because he was acting as a magistrate and not a lawyer when he engaged in the conduct stated above.
Finally, the Hearing Board finds that the allegation Respondent passed a personal note to a litigant in open court was not proved by clear and convincing evidence.
SANCTION IMPOSED: PUBLIC CENSURE

II. PROCEDURAL HISTORY AND BACKGROUND

On March 15, 2006, the People filed their complaint in this matter and Respondent filed his answer on April 20, 2006. On June 9, 2006, the People filed a motion to amend their complaint and the PDJ granted the motion and accepted the amended complaint on July 21, 2006. The amended complaint contained a single additional count charging a violation of Colo. RPC 8.4(d), conduct prejudicial to the administration of justice. The People previously charged Respondent with violation of the Colorado Code of Judicial Conduct as provided in C.R.C.P. 251.1(b) and C.R.M. 5(g).
The People presented testimony from Respondent, Rena Rodriguez, Katherine Fushin, Magistrate Elizabeth Fedde, Betty Sommars, Robert Dean, Mathew McConville, Sheila Smith, Darren Gonzales, Rodrigo Sanchez, and investigator Mary Lynn Elliott. Respondent presented testimony from his wife Susan Gilbert, Fred Binkley, Richard *1115 Ovson. Respondent also provided the video depositions of Brenda McMellan and Ryan Davis.
At the conclusion of the evidence, the People argued that Respondent's conduct, at a minimum, warrants public censure. Respondent argued that the People failed to establish clear and convincing evidence on any of the counts set forth in the complaint.

III. FINDINGS OF MATERIAL FACT

The Hearing Board considered the testimony of each witness and each exhibit admitted into evidence, and finds the following material facts established by clear and convincing evidence.
Background
Respondent has taken and subscribed the Oath of Admission, was admitted to the Bar of the State of Colorado on or about April 19, 1984, and is registered as an attorney upon the official records of the Colorado Supreme Court, Attorney Registration No. 13603. He is therefore subject to the jurisdiction of the Colorado Supreme Court and the Office of the Presiding Disciplinary Judge in these disciplinary proceedings as they relate to his conduct as a magistrate. C.R.C.P. 251.1(b) and CRM 5(g). Respondent's registered business address is P.O. Box 740712, Arvada, CO 80006 and his registered home address is 100647 Lowell Drive, Westminster, CO 80031.
Respondent is an attorney who has served as an Eagle County magistrate and as a part-time Denver County magistrate since 2005. He serves in the Denver County Small Claims Court on Mondays from 8:30 a.m. to 4:00 p.m. and in the Denver Night Court between 4:30 and 8:30 p.m.
On Monday, September 26, 2005, Respondent presided over the small claims court case of Infinite Flooring and Design v. Rodriguez, a case concerning kitchen-remodeling work Infinite Floor and Design ("Infinite") completed for Rena Rodriguez at her residence based upon a written contract. After completing most, but not all of the remodeling, Infinite demanded that Ms. Rodriguez pay the remainder of what they calculated she owed them. Ms. Rodriguez refused to pay Infinite additional money because she did not agree to pay for work not specified in the original contract and because she believed the completed work was poorly done and incomplete.
After attempts to settle the dispute informally, Infinite sued Ms. Rodriguez in the Denver County Small Claims Court and asked for an award of $6,793.75 based upon the work they had performed. Ms. Rodriguez filed an answer denying the claim and counterclaimed for $7,500.00, the amount of money she claimed it would take to correct Infinite's remodeling errors.
The Parties Present their Case to Respondent
The parties appeared pro se in Denver County Small Claims Court on September 29, 2005. After being sworn-in, the parties presented their respective positions to Respondent in his capacity as a Denver County magistrate. Respondent heard testimony and arguments from the parties and reviewed the evidence they presented. During this process, Respondent went off the record to review dozens of pictures Ms. Rodriguez took of the work Infinite completed.[1]
The courtroom where these events took place is small, measuring approximately twenty feet by twelve feet.[2] Ms. Rodriguez, who is approximately five feet tall, testified that while she was at the front of the magistrate's bench showing Respondent her pictures, he slid a post-it note in her direction which stated, "will you see me, yes or no." Ms. Rodriguez further testified that she did not know how to respond, so she placed a question mark on the note. She further testified that Respondent then told her in a normal tone of voice, "question mark, what kind of answer is that?"
Ms. Rodriguez then testified that she wrote her phone number on the post-it note while she was standing at the bench, because she did not know what else to do.
The two witnesses from Infinite standing behind the plaintiff's podium at the time, *1116 Brenda McMellan and Ryan Davis, testified that they did not see or hear the conduct Ms. Rodriguez testified to on this point. They both testified that they were intently watching and listening to Ms. Rodriguez and Respondent when Ms. Rodriguez was immediately in front of the bench showing her pictures to Respondent.
The Hearing Board finds that after weighing the conflicting evidence from Ms. Rodriguez on the one hand and Ms. McMellan and Mr. Davis on the other, it was not proved by clear and convincing evidence that Respondent passed the note to Ms. Rodriguez or that Respondent and Ms. Rodriguez exchanged comments concerning the note.
After reviewing Ms. Rodriguez's pictures, Respondent continued the matter and directed the parties to attempt to resolve their differences through mediation with an independent contractor. Respondent stated on the record, "What you folks need to do is have a third party mediator go with you to the house, go through the punch lists, and determine what has to be done." The representative of Infinite told Respondent that he would "get somebody," a mutually agreeable contractor, to decide what should be done from the "punch list" the magistrate referenced in his comments to the parties.
After discussing mediation, Respondent handed the parties a stipulation agreement in the event they could reach a settlement on what "punch list" items Infinite would perform and how much money Ms. Rodriguez would pay to conclude the project. If the parties did not resolve their differences by the next court date, Respondent told them he would rule on the claims that day.
Before the parties left, Respondent told them off the record that DU Law School had a free mediation program. Respondent continued the matter until October 31, 2005.
Respondent calls Ms. Rodriguez four times on September 26, 2005
Between 12:30 p.m. and 8:30 p.m. on September 26, 2005, Respondent's cell phone records show he attempted to call Ms. Rodriguez on her cell phone four separate times. The first three calls lasted less than a minute; they were either dropped calls or Respondent hung-up when his call was transferred to Ms. Rodriguez's voicemail. Ms. Rodriguez did not answer any of these calls. Respondent eventually left a voicemail on his final call at 8:30 p.m. That message was as follows:
"My name is Bob, I'm trying to reach Rena. If this is the right phone number please call me at XXX-XXX-XXXX."
Circumstances Surrounding Respondent's Calls
Respondent had not provided any notice to the litigants while they were in court that he intended to make these ex parte contacts to Ms. Rodriguez. After making the calls, Respondent made no effort to notify or disclose to the litigants that he had made these ex parte calls.
Although Respondent called Ms. Rodriguez four times, he did not call or attempt to call Infinite or anyone from the company on September 26, 2005 or thereafter. There is no evidence that it was necessary for Respondent to personally deliver a message to Ms. Rodriguez that evening or anytime thereafter. Respondent employs a clerk, Sheila Smith, who would have made the calls if he had directed her to do so. Furthermore, the case was continued for three weeks; sufficient time for the clerk to provide detailed information about DU Law mediators to the parties. This was a duty the clerk customarily performed.
After making four separate calls to Ms. Rodriguez on September 26, 2005, Respondent did not document his efforts in any way, although it apparently was his practice to do so in Eagle County where he does not have a clerk available to handle such administrative matters. During the period of time Respondent made these calls, he was either on duty as a magistrate in the small claims court, or presiding over night court.
Infinite Flooring and Design finds potential mediators
In the intervening three weeks following the first appearance of the parties on September 26, 2005, Infinite contacted several potential contractors who were willing to mediate the parties dispute by reviewing the "punch list" and determine the cost to complete *1117 the work. Ms. Rodriguez, however, did not agree to use any of the mediators Infinite offered, claiming that she did not trust them.
The People send notice to Respondent of Ms. Rodriguez's complaint
On October 3, 2005, Ms. Rodriguez reported Respondent's conduct to the People. On October 14, 2005, two weeks before the Infinite Design v. Rodriguez case was set for trial, the People sent notice to Respondent via first class mail and certified mail at the addresses he listed with the Office of Attorney Registration. Respondent did not sign for the certified letter until November 2, 2005. The first class letter was not returned to the People. Nevertheless, Respondent testified that he did not receive notice of Ms. Rodriguez's complaint from any source until after he ruled on her case.
After acknowledging notice of Ms. Rodriguez's complaint, Respondent advised the chief judge of the county court of her allegations as well as his wife.
Respondent rules on Infinite Flooring and Design's claim without considering Ms. Rodriguez's request for recusal
When the parties returned to court on October 31, 2005, Ms. Rodriguez attended the trial with her brother because she was concerned about appearing before Respondent alone. When Respondent called the case, Ms. Rodriguez stated on the record:
"I'm going to request that you take yourself off of my case because I'm not comfortable with you hearing my case."
Respondent answered, "No, we're going to trial." He then reviewed the evidence with the parties and entered an order against Ms. Rodriguez in the amount of $3,798.00.
Respondent's character
Two witnesses, life long personal friends, testified to Respondent's fidelity to his wife and his character for honesty. Respondent's wife also testified that Respondent is a man of good character and faithful in their marriage.

IV. CONCLUSIONS OF LAW SUBSTANTIVE ALLEGATIONS

Claim I
"An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective." Colorado Code of Judicial Conduct ("C.J.C."), Canon 1 (emphasis added).
"A judge should respect and comply with the law and should conduct himself or herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." C.J.C., Canon 2(A) (emphasis added).
The integrity of the bench depends not only upon the actions but also on perceived actions of judges who preside over disputed matters brought to court. "A judge should avoid all impropriety and appearance of impropriety." C.J.C., Canon 2, Commentary.
Respondent's voicemail to Ms. Rodriguez did not clearly indicate the purpose of the call. The timing, language, and other circumstances might reasonably leave a litigant in a quandary. Given these circumstances, Ms. Rodriguez had a legitimate basis for requesting that Respondent not serve on her case. When Respondent failed to address Ms. Rodriguez's reasonable concerns and abruptly announced, "No, we are going to trial," he failed to act openly with a reasonable and lawful concern of a party litigant. This conduct falls short of promoting public confidence in our judicial system. The Hearing Board therefore concludes that Respondent violated C.J.C., Canons 1 and 2(A).
Claim II
"A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom a judge deals in his or her official capacity, and should require similar conduct of lawyers, and of a judge's staff, court officials, and others subject *1118 to the judge's direction and control." C.J.C., Canon 3(A)(3).
The language and tone Respondent used in addressing Ms. Rodriguez in what could be perceived to be a personal call, was less than appropriate and dignified. Moreover, the content of the message did not clearly indicate, as it should have, that it was solely an attempt to deliver administrative information to the parties as Respondent testified. Certainly, the Denver County Small Claims Court operates in a much less formal manner than other courts, but referring to Ms. Rodriguez as "Rena" and himself as "Bob" and asking her to call him back without any reference to court business, is less than an appropriate or dignified manner for a judge or magistrate to use in addressing a party. The Hearing Board therefore concludes that Respondent violated C.J.C., Canon 3(A)(3).
Claim III
"A judge should accord to every person who is legally interested in a proceeding, or his or her lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding. . . ." C.J.C., Canon 3(A)(4) (emphasis in original).
Had there been some pressing need for Respondent to personally contact Ms. Rodriguez ex parte on a strictly ministerial matter, Respondent's contact would be a technical violation of Judicial Canon 3(A)(4), however, this was not the case. There was no urgent need for Respondent to personally call Ms. Rodriguez. Given that a judge must avoid the appearance of impropriety as stated in the Commentary to Canon 2, the Hearing Board therefore concludes that Respondent violated C.J.C., Canon 3(A)(4).
Count IV
"A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: . . . a judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . ." C.J.C., Canon 3(C)(1)(a) (emphasis added).
The totality of circumstances could reasonably lead to questioning Respondent's impartiality in going forward on Ms. Rodriguez's case after she refused to return his personal call and asked that he not continue to preside over her case. Even though Ms. Rodriguez made her motion for recusal orally and not in strict compliance with Rule 97, Respondent should have made a record on the issue. His failure to address this issue exacerbated the error he made in contacting Ms. Rodriguez ex parte in the first instance. The Hearing Board therefore concludes that Respondent violated C.J.C., Canon 3(C)(1)(a).
Count V
"A part-time judge: . . . shall not use the judge's title, position, resources or the facilities of the judge's office for any purpose other than the conduct of judicial business." C.J.C., Canon 8(B)(6) (emphasis added).
Because of the conflicting evidence, the Hearing Board finds that it was not proved by clear and convincing evidence that Respondent gave the note to Ms. Rodriguez. Consequently, the Hearing Board concludes that there is insufficient proof that Respondent's conduct in open court and his ex parte contact was unrelated to judicial business. Count V is therefore dismissed.
Count VI
"It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice." Colo. RPC 8.4(d). While the record supports a finding of conduct prejudicial to the administration of justice, the Hearing Board finds that Respondent was acting as a magistrate and not as a lawyer when he contacted Ms. Rodriguez and later failed to recuse himself. Therefore, the Hearing Board renders its opinion based on violation of the Colorado Code of Judicial Conduct and not the Colorado Rules of Professional Conduct. Count VI is therefore dismissed.

*1119 V. SANCTIONS

"Every attorney serving as a magistrate pursuant to Colorado Rules for Magistrates, Chapter 35, vol. 12, C.R.S., is subject to the disciplinary and disability jurisdiction of the Supreme Court for conduct performed as a magistrate as provided by C.R.M. 5(h)." C.R.C.P. 251.1(b) (emphasis added). "All magistrates in the performance of their duties shall conduct themselves in accord with the provisions of the Colorado Code of Judicial Conduct." C.R.M 5(g).
Under C.R.M. 5(g), the Hearing Board is directed to determine "what discipline, if any, is appropriate" for a violation of the Colorado Code of Judicial Conduct. While the Hearing Board finds that Respondent's conduct implicates the Colorado Code of Judicial Conduct and not the Colorado Rules of Professional Conduct, we nevertheless look to the American Bar Association Standards for Imposing Lawyer Sanctions (1991 & Supp. 1992) ("ABA Standards") for guidance in determining the appropriate discipline.

Analysis Under the ABA Standards
The Hearing Board finds that two ABA Standards provide guidance in determining the appropriate sanction in this matter. ABA Standard 6.33 concerns Improper Communications with Individuals in the Legal System and provides:
Reprimand is generally appropriate when a lawyer is negligent in determining whether it is proper to engage in communication with an individual in the legal system, and causes injury or potential injury to a party or interference or potential interference with the outcome of the legal proceeding.
Reprimand is therefore the presumptive sanction for Respondent's misconduct as alleged in Count III, ex parte communications.
ABA Standard 5.23 concerns inappropriate conduct of a governmental official and provides:
Reprimand is generally appropriate when a lawyer in an official or governmental position negligently fails to follow proper procedures or rules, and causes injury or potential injury to a party or to the integrity of the legal process.
Reprimand is therefore the presumptive sanction for Respondent's misconduct as alleged in Counts I, II, and IV.
However, before imposing a sanction after a finding of lawyer misconduct, ABA Standard 3.0 directs the Hearing Board to first consider the following factors to determine whether the presumed sanction is appropriate:
(1) the duty violated;
(2) the lawyer's mental state;
(3) the actual or potential injury caused by the misconduct; and
(4) the existence of aggravating or mitigating factors.
A. THE DUTY VIOLATED
Respondent violated his duties as an attorney as well as a judicial official to the justice system by contacting one of the party litigants ex parte and failing to remove himself from the case upon request of the party litigant who considered his contacts improper. Respondent's conduct violated his duty as a judicial officer to fairly resolve and appear to fairly resolve a case on its merits within the judicial process.
B. THE LAWYER'S MENTAL STATE
Respondent acted, at a minimum, negligently in failing to heed a substantial risk that Ms. Rodriguez and other citizens would interpret his effort to contact her ex parte as improper.
C. THE ACTUAL OR POTENTIAL INJURY
The injury or potential injury in this case is to the integrity of the judicial process. As Ms. Rodriguez testified, this experience has left her with doubts about the integrity of our judicial system. Judicial officers, above all other participants in the judicial process, should be above reproach. They should act with integrity and avoid even the appearance of impropriety. It is axiomatic therefore that judges process and resolve judicial disputes within the confines of the law.
*1120 D. AGGRAVATING AND MITIGATING FACTORS
1. MATTERS IN AGGRAVATION, ABA STANDARD 9.2
The Hearing Board considered evidence of the following aggravating circumstances in deciding the appropriate sanction to impose.
Vulnerability of Victim-9.22(h)
Ms. Rodriguez was particularly vulnerable. She, through no fault of her own, was placed in a difficult predicament. She wisely refused to return Respondent's call but had yet to appear before him, the judge who would determine the merits of her case.
Substantial Experience in the Practice of Law9.22(i)
Respondent has practiced law for nearly twenty-three years.
2. MATTERS IN MITIGATION, ABA STANDARD 9.3
The Hearing Board considered evidence of the following mitigating circumstances in deciding the appropriate sanction to impose.
Absence of a Prior Disciplinary Record 9.32(a)
Respondent practiced nearly 23 years without a prior disciplinary record.
Character or Reputation9.32(g)
The undisputed evidence is that Respondent enjoys a reputation as a man of good character.

Analysis Under Case Law and ABA Standards
Respondent's conduct in contacting a party litigant ex parte and later failing to recognize the impropriety or appearance of impropriety in continuing to preside over the case, are actions that violate the Colorado Code of Judicial Conduct alleged in Counts I-IV. It is well established that the courts must "meticulously avoid any appearance of partiality, not merely to secure the confidence of the litigants immediately involved, but `to retain public respect and secure willing and ready obedience to their judgment.'" People v. District Court, 192 Colo. 503, 560 P.2d 828, 831-32 (1977) (quoting Nordloh v. Packard, 45 Colo. 515, 101 P. 787, 790 (1909)).
Respondent acted negligently by not heeding the Colorado Code of Judicial Conduct. Taken as a whole, his conduct raises the appearance of improperly contacting a female litigant and failing to recognize the consequences of doing so to the judicial process. Even though the aggravating factors outweigh the mitigating factors, the Hearing Board finds that ABA Standards 5.23 and 6.33 apply and public reprimand is the appropriate sanction. But see Mississippi Commission on Judicial Performance v. Lewis, 913 So.2d 266 (Miss.2005).

VI. CONCLUSION

Public reprimand is generally appropriate when a lawyer a lawyer, negligently communicates with an individual in the legal system or negligently fails to follow proper procedures and thereby causes potential interference with the outcome of a legal proceeding. ABA Standards 5.23 and 6.33. We find Respondent's conduct as a magistrate warrants similar discipline. Respondent called Ms. Rodriguez ex parte without due consideration of his duty to conduct himself with dignity and integrity. The content of the voicemail he left for her and the surrounding circumstances do not support his claim that he called solely for the purpose of leaving "ministerial information."
This is Respondent's only instance of misconduct in nearly twenty-three years of service to the bench and bar and the Hearing Board gives weight to this factor. Respondent's conduct here appears to be an isolated example of misconduct. Nevertheless, Respondent failed to heed a substantial risk that his conduct would or could injure the integrity of the judicial system.
Balancing all the factors the Hearing Board must consider, the most important of which is the protection of the public, the Hearing Board believes the media exposure this case has received will assist in protecting the public. Furthermore, this reprimand, a matter that will permanently remain in Respondent's disciplinary record, will be available for public scrutiny and serve as notice to *1121 Respondent that his conduct in this case violated the Colorado Code of Judicial Conduct.

VII. ORDER

The Hearing Board therefore ORDERS:
1. MAGISTRATE ROBERT E. GILBERT is hereby PUBLICLY CENSURED.
2. MAGISTRATE ROBERT E. GILBERT SHALL pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days from the date of this Order. Respondent shall have ten (10) days thereafter to submit a response.
3. MAGISTRATE ROBERT E. GILBERT SHALL register and complete Ethics School sponsored by the Office of Attorney Regulation Counsel within one year of the date of this Order.
NOTES
[1] See People's Exhibit 29.
[2] See People's Exhibits 2, 11, 12 and 36.