The PEOPLE of the State of
Colorado, Petitioner,

v.

Dywand D. JULIEN, Respondent.

No. 01SC85.

Supreme Court of Colorado,
En Banc.

June 10, 2002.

As Modified on Denial of Rehearing
June 24, 2002. *

---

* Justice MARTINEZ and Justice BENDER would grant the Petition.

Ken Salazar, Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner.

E. Ronald Beeks, Evergreen, Colorado, Attorney for Respondent.

Justice HOBBS delivered the Opinion of the Court.

This case arises out of Dywand D. Julien's conviction after a jury trial of first-degree assault and possession of a weapon by a previous offender. We granted certiorari in order to review the court of appeals' unpublished decision, *People v. Julien*, No. 98CA2542 (Colo.App.1998),[1] which held that the trial judge's previous employment by the district attorney's office created an appearance of partiality that required vacating Julien's conviction and ordering a new trial.

Julien's trial occurred five weeks after the trial judge took the bench. While he was with the district attorney's office, the judge took no part in the investigation, preparation, or presentation of Julien's case, nor did he supervise those who did, nor had he obtained personal knowledge of disputed evidentiary facts while in the employment of the district attorney's office. The sole basis for disqualification was Judge Schwartz's prior employment with that governmental office.

We conclude that no basis existed for the court of appeals' disqualification of Judge Schwartz, and we reinstate Julien's conviction.

## I.

On August 2, 1995, at approximately three in the morning, Officer Ronald Sheppard stopped a car with expired license plates. Upon investigation at the scene, Officer Sheppard discovered that the driver had an outstanding warrant. Julien, a passenger in

---

1. We granted certiorari on two issues:

 1. Whether the trial judge's previous employment with the district attorney's office constituted an appearance of impropriety mandating reversal of the defendant's judgment of conviction where the judge had no involvement in the defendant's case while employed with the district attorney.

 2. Whether, assuming there was an appearance of impropriety, the trial judge's failure before trial to disclose to the defendant his previous employment with the district attorney's office and to recuse himself when a motion to recuse was filed before sentencing constituted harmless error.

the car, exited the vehicle. Officer Sheppard ordered Julien to get back into the car, but Julien disregarded the order.

Officer Sheppard repeatedly instructed Julien to get back into the car, but Julien ignored him and began walking away. Officer Sheppard then crossed the street and placed his hands on Julien's shoulder. As Officer Sheppard forcibly walked him back to the car, Julien pulled a pistol from his waistband. Officer Sheppard grabbed his weapon from the holster and fired three shots, one of which struck Julien.

Judge Larry Schwartz received the assignment to hear Julien's case. Judge Schwartz had taken the bench five weeks before the trial began. He had previously been employed as an assistant district attorney in the El Paso County District Attorney's office, the office responsible for prosecuting Julien.

In February 1997, the jury convicted Julien of first degree assault on a peace officer and possession of a weapon by a previous offender. In July 1997, prior to sentencing, Julien, pro se, and then through his new court-appointed attorney, made a motion for substitution of judge. The two affidavits accompanying the attorney's motion recited that Judge Schwartz had been employed by the district attorney's office at the time that office filed charges against Julien; Judge Schwartz was a supervising attorney and team leader in the office; and another supervising attorney of the district attorney's office employed at the same time as Judge Schwartz had appeared before Judge Schwartz to prosecute Julian. These facts are uncontested.[2]

In considering Julien's motion for substitution of judge, Judge Schwartz stated that he did not work on Julien's case, had no recollection of it, and did not supervise anyone involved in the case. Having found no basis for disqualification, Judge Schwartz nevertheless suspended further proceedings and referred the matter to another judge.

Judge Martinez found that "there's been no showing that Judge Schwartz supervised

[the prosecutor], that Judge Schwartz was involved in any way in the case, that Judge Schwartz investigated the case, that he was a team leader of anybody who in fact was in the case. The affidavit does not show any kind of involvement whatsoever of Judge Schwartz."

Judge Martinez determined that there was no basis for disqualification and returned the case to Judge Schwartz for sentencing. Judge Schwartz sentenced Julien to the department of corrections for a term of eighteen years. Julien appealed. The court of appeals ruled that "the information in the district attorney's office during its investigation of the offense must be imputed to the judge ... and the former employment relationship between the trial judge and the district attorney's office created an appearance of partiality." We disagree.

## II.

■ We determine that no basis existed for the court of appeals' disqualification of Judge Schwartz. While a member of the district attorney's office, Judge Schwartz did not participate in the investigation, preparation, or presentation of the case against Julien, nor did he have any other involvement with the case, such as being a supervising attorney of the attorneys conducting the prosecution, or gaining personal knowledge of disputed evidentiary facts of the case in his former employment. Of itself, Judge Schwartz's employment in the district attorney's office as a team leader five weeks prior to the trial of the case was not a sufficient basis for disqualification. We conclude: (1) that Canon 3 of Colorado's Code of Judicial Conduct contains a limited prior governmental association exception applicable to this case; and (2) Julien's post-conviction disqualification motion did not allege a sufficient basis for Judge Schwartz's disqualification.

## A.

### Prior Governmental Association

The court of appeals determined that the "information in the district attorney's office

---

**2.** Judge Schwartz was employed by the district attorney's office from January 1990 to December 1996.

during its investigation of the offense must be imputed to the judge." Based on this imputation, the court of appeals concluded that "the former employment relationship between the trial judge and the district attorney's office created an appearance of partiality." The court of appeals acknowledged that "the judge had neither participated in that investigation nor appeared as counsel for the prosecution." Yet, it determined that Judge Schwartz had a duty under Canon 3 to disqualify himself sua sponte from presiding over the case when it was assigned to him.

■■■ We examine the disqualification issue de novo. *Smith v. Dist. Court,* 629 P.2d 1055, 1056 (Colo.1981); *People v. Dist. Court,* 192 Colo. 503, 506, 560 P.2d 828, 832 (1977). We start with the precept, basic to our system of justice, that a judge must be free of all taint of bias and partiality. *People v. Dist. Court,* 192 Colo. at 506, 560 P.2d at 831. Section 16–6–201, Crim. P. 21(b), and Canon 3 set forth Colorado standards by which a judge determines sua sponte or in response to a motion whether to disqualify himself or herself from the case.

■■■ If a judge has a bias or prejudice that in all probability will prevent him or her from dealing fairly with a party, the judge must not preside over the case. *People v. Arledge,* 938 P.2d 160, 167 (Colo.1997). A judge must also consider the Code of Judicial Conduct sua sponte or in response to a disqualification motion in determining whether to serve on the case. *Zoline v. Telluride Lodge Ass'n,* 732 P.2d 635, 639 (Colo.1987).

Julien's challenge to Judge Schwartz's service did not turn in any way on a claim of actual bias or prejudice, or on any other basis under section 16–6–201(3), Crim. P. 21(b)(3), and Canon 3, apart from Judge Schwartz's prior association with the District Attorney's Office.

Canon 3 addresses prior professional association and has a limited exception to appearance of partiality disqualification, in regard to prior governmental association. Canon 3(C)(1) requires a judge to disqualify himself or herself, if the judge's impartiality might reasonably be questioned:

C. Disqualification

(1) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) A judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) a judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it. . . .

C.J.C. 3(C)(1)(a), (b).

The language of Canon 3(C)(1)(a) & (b) and its commentary derive virtually verbatim from the American Bar Association's Model Code of Professional Responsibility and Code of Judicial Conduct. *See* ABA Model Code at 58–59 (as amended August 1977). On the issue of prior governmental association, the Commentary to Colorado's Canon 3(C)(1) thus reads:

*A lawyer in a governmental agency does not necessarily have an association with other lawyers employed by that agency within the meaning of this subsection; a judge formerly employed by a governmental agency, however, should disqualify himself or herself in a proceeding if the judge's impartiality might reasonably be questioned because of such association.*

C.J.C. 3(C)(1) cmt. (emphasis added).

This commentary is elliptical and requires explication. It appears to provide for a prior governmental-association exception to Canon 3's standard of disqualification for the appearance of partiality in some cases but not in others. Fortunately, a substantial body of parallel federal and state rules, precedent and legal commentary guides our construction of Canon 3, by illuminating the basis, extent, and limit of the prior governmental-association exception.

The majority rule is that judges are not disqualified solely on the basis that they were formerly employed by the prosecutor's

office. Instead, when employed by that office, the judge to be disqualified must have performed some role in the case or have obtained actual knowledge of disputed evidentiary facts of the case:

> [W]here the judge did not actually participate in the investigation, preparation, or presentation of the case against the person who later appears before him as a defendant, the mere fact that he happened to be employed by the office that did prosecute the defendant has generally been held not to provide a legally sufficient ground for judicial disqualification.

Richard E. Flamm, *Judicial Disqualification, Recusal and Disqualification of Judges* § 11.5.2, at 328–29 (1996).

 Our canons, statutes, and rules governing judicial conduct do not require disqualification of a judge if the only prior association the judge has with the defendant's case is that the judge was associated with the district attorney's office when that case was in the office.[3] On the other hand, a judge must disqualify himself or herself sua sponte or in response to a disqualification motion, if facts exist tying the judge to personal knowledge of disputed evidentiary facts concerning the proceeding, some supervisory role over the attorneys who are prosecuting the case, or some role in the investigation and prosecution of the case during the judge's former employment. But, because of Canon 3(C)(1)'s association exception, the judge's impartiality is not subject to reasonable question if the only basis for disqualification is the trial judge's former employment with the government office.

 Case law in other jurisdictions supports our construction of Canon 3(C)(1). We consider federal precedent and that of states with a similar rule in construing the provisions of Colorado's rule. *Air Communication & Satellite Inc. v. EchoStar Corp.*, 38 P.3d 1246, 1251 (Colo.2002).

Like Colorado's Canon 3, the United States Code provides that a judge shall dis-

qualify himself or herself in any proceeding in which his or her impartiality might reasonably be questioned. 28 U.S.C. § 455(a) (2002). The U.S.Code then provides for disqualification under this rubric when a judge, during his or her government employment, has participated as counsel, adviser, or material witness concerning the proceeding, or has expressed an opinion about the merits of the case. 28 U.S.C. § 455(b)(3) (2002).

Federal courts have required recusal under § 455(b)(3) in cases that involve the judge's participation in or knowledge of the case in some way as a former governmental attorney. The Tenth Circuit's summary of the applicable federal law comports with Colorado law on this point:

> In real terms, the trial judge in this case had no connection with the defendant or the substance of his prosecution prior to the filing of the instant case. In the absence of such a connection, the current version of 28 U.S.C. § 455(b)(3) does not require recusal, and the trial judge did not err by his refusal to disqualify himself under that subsection.

*United States v. Gipson*, 835 F.2d 1323, 1326 (10th Cir.1988); *accord Jenkins v. Bordenkircher*, 611 F.2d 162, 166–67 (6th Cir.1979); *cf. United States v. Arnpriester*, 37 F.3d 466 (9th Cir.1994) (disqualifying judge who had supervisory responsibility in the United States Attorney's Office for the investigation and prosecution of the crimes at issue);

A number of federal decisions hold that former association with the prosecutor's office, absent other facts of association with the case, does not create a reasonable question as to a judge's impartiality under 28 U.S.C. § 455(a). *See United States v. Ruzzano*, 247 F.3d 688, 693 (7th Cir.2001) (holding that judge was not disqualified under § 455(a) for being a former assistant United States attorney in the office handling the prosecution); *United States v. Di Pasquale*, 864 F.2d 271, 279 (3d Cir.1988) (holding that impartiality of judge was not in doubt where defendant had

---

**3.** Contrary to the court of appeals' ruling in this case, the knowledge of another attorney in the district attorney's office is not imputed to his or her colleagues. The rule is different for law firm attorneys because they individually and collec-

tively have a financial interest in the outcome of the case. *Smith v. Beckman*, 683 P.2d 1214, 1216 (Colo.App.1984) (citing *SCA Serv., Inc. v. Morgan*, 557 F.2d 110 (7th Cir.1977)).

not shown the judge's prior involvement as a prosecutor in his case); *see also Laird v. Tatum*, 409 U.S. 824, 830, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972) (Justice Rehnquist stating that his employment at the Justice Department where the case was pending was, of itself, not grounds for discretionary disqualification).

Of itself, being an attorney in the district attorney's office during the charging and preparation of the case is not a sufficient basis for disqualification. A clear majority of states agrees.[4] *See* Flamm, *supra*, at 328–29; *see, e.g., Payne v. State*, 48 Ala.App. 401, 265 So.2d 185 (1972) ("The holding of prosecutorial office as distinguished from working on a concrete piece of litigation is not alone disqualifying for one who later becomes a judge."); *see generally* Jay M. Zitter, Annotation, *Prior Representation or Activity as Prosecuting Attorney as Disqualifying Judge from Sitting or Acting in Criminal Case*, 85 A.L.R.5th 471 (2001) (discussing and collecting cases).

Many trial and appellate judges have spent a portion of their careers working for government agencies; disqualification should be based on bias and prejudice, or the reasonable appearance of partiality, not on technical grounds having to do with prior governmental association. *See Gipson*, 835 F.2d at 1326.

### B.

#### Julien's Disqualification Motion

Section 16–6–201 and Crim. P. 21 address disqualification motions. If the facts of two affidavits state grounds for disqualification, the judge must disqualify himself or herself:

A motion for change of judge on any ground must be verified and supported by the affidavits of at least two credible persons not related to the defendant, stating facts showing the existence of grounds for disqualification. If the verified motion and supporting affidavits state facts showing grounds for disqualification, the judge must enter an order disqualifying himself. After disqualifying himself, the judge may require a full hearing upon the issues raised by the affidavits and shall request that another judge conduct the hearing. The other judge shall make findings of fact with regard thereto, and such findings shall be included as a part of the trial court record.

§ 16–6–201, 6 C.R.S. (2001).

Upon the filing of a motion under this section (b) [substitution of judges], all other proceedings in the case shall be suspended until a ruling is made thereon. If the motion and supporting affidavits state facts showing grounds for disqualification, the judge shall immediately enter an order disqualifying himself or herself. Upon disqualifying himself or herself, the judge shall notify forthwith the chief judge of the district, who shall assign another judge in the district to hear the action.

Crim. P. 21(b)(3).

 In ruling on the disqualification motion, a judge must accept as true the factual statements contained in the motion and affidavits. *People v. Botham*, 629 P.2d 589, 595 (Colo.1981). The judge must determine as a matter of law whether they allege legally sufficient facts for disqualification. *S.S. v. Wakefield*, 764 P.2d 70, 73 (Colo.1988).

Julien did not contend that Judge Schwartz had any actual bias or prejudice against him or any disqualifying interest in the case. Instead, as conclusive evidence of an appearance of bias, Julien relied on the fact that Judge Schwartz had been employed

---

4. *See, e.g., Payne v. State*, 48 Ala.App. 401, 265 So.2d 185, 192 (1972); *Lofton v. State*, 57 Ark. App. 226, 944 S.W.2d 131, 135 (1997); *People v. Burnett*, 73 Ill.App.3d 750, 29 Ill.Dec. 678, 392 N.E.2d 235 (1979); *People v. Delongchamps*, 103 Mich.App. 151, 302 N.W.2d 626 (1981); *State v. McNamara*, 212 N.J.Super. 102, 514 A.2d 63 (App.Div.1986); *People v. Mitchell*, 137 Misc.2d 450, 521 N.Y.S.2d 639, 640 (County Ct.1987); *Commonwealth v. Abu–Jamal*, 553 Pa. 569, 720 A.2d 121 (1998); *Owens v. State*, 13 S.W.3d 742 (Tenn.Crim.App.1999); *Gamez v. State*, 737 S.W.2d 315, 319 (Tex.Cr.App.1987). *But see State ex rel. Corbin v. Superior Court of Ariz.*, 155 Ariz. 560, 748 P.2d 1184, 1186 (1987)(holding that when adversarial proceedings in a criminal case are assigned to a judge who was a member of the prosecution staff at the time the prosecution commenced, the judge should take appropriate steps to have the case assigned to another judge).

by the district attorney's office as a team leader five weeks before his assignment to Julien's case.

■■■ Of itself, Judge Schwartz's previous employment as a member of the district attorney's office did not mandate his recusal sua sponte or in response to Julien's motion. Canon 3(C)(1) does not impute the knowledge of government attorneys to other attorneys in that office, and Colorado has no bright-line rule that imposes a waiting period before one may serve as a judge in cases involving the judge's former office. The statutes and rules contain no provision requiring a judge to disclose or disqualify himself sua sponte for an association that Canon 3(C)(1) excepts as a basis for disqualification.[5]

Neither Judge Schwartz nor Judge Martinez found any involvement with Julien's case in Judge Schwartz's former capacity as a prosecutor. Had Judge Schwartz personally participated in the prosecution of Julien's case in any way, including having been in a supervisory capacity over attorneys conducting the investigation or prosecution, or had the judge gained personal knowledge of disputed evidentiary facts during his former association with the district attorney's office,[6] Canon 3(C)(1) would have disqualified him from serving as a judge in this case.

Julien raised no basis for disqualifying Judge Schwartz under Canon 3, Crim. P. 21(b)(3), or section 16–6–201(3), but the appearance of bias can be damaging to public confidence in the administration of the court system. *Botham*, 629 P.2d at 595. When Julien made his disqualification motion after his conviction and before sentencing, Judge Schwartz, after determining that no basis for disqualification existed, suspended further proceedings and sent the matter to Judge Martinez for a ruling on substitution of judge.

Taking the allegations Julien made through his affidavit as being true, Judge Martinez determined that "there's been no showing that Judge Schwartz supervised [the prosecutor], that Judge Schwartz was involved in any way in the case, that Judge Schwartz investigated the case, that he was a team leader of anybody who in fact was in the case. *The affidavit does not show any kind of involvement whatsoever of Judge Schwartz.*" (Emphasis added.)

The record does not support any basis for Judge Schwartz's disqualification. The court of appeals erred by imputing the knowledge of other deputy district attorneys in the office to Judge Schwartz and reversing Julien's conviction, based only on the judge's prior association with that office.[7]

### III.

Accordingly, we reverse the judgment of the court of appeals and reinstate Julien's conviction and sentence. We remand this case to the court of appeals for consideration of any issues remaining on appeal.

Justice BENDER dissents, and Justice MARTINEZ joins in the dissent.

Justice BENDER, dissenting.

The majority concludes that a judge who was formerly employed by the district attorney's office is not required to recuse himself from presiding over a criminal case that was pending while he worked in the D.A.'s office unless he had some role in or supervised the investigation or prosecution of the case or has personal knowledge of disputed evidentiary facts. I believe that this bright-line rule is inconsistent with both the Code of

---

5. The court of appeals ruled that Judge Schwartz should have disclosed sua sponte his prior association with the district attorney's office. However, because Canon 3 does not make this association of itself the basis for disqualification, we do not agree that sua sponte disclosure was necessary.

6. During the hearing before Judge Schwartz on his disqualification motion, Julien alleged that his name had been mentioned to Judge Schwartz in another person's case. Judge Schwartz said he had no recollection of this but that Julien

could raise this and any other matter with Judge Martinez.

7. The court of appeals cites *People v. Macrander*, 828 P.2d 234 (Colo.1992) in support of Judge Schwartz's disqualification. We find this case inapplicable because it turned on a statutory grounds for disqualification of a juror and did not address Canon 3(C)(1)'s association exception. The challenge there was to a juror who was related to an attorney of record.

Judicial Conduct and the core values of our judicial system. I also believe that the trial judge in this case should have disclosed his recent employment with the district attorney's office and given the defendant an opportunity either to request a recusal or to waive the appearance of impropriety. Because the trial judge's failure to disclose and, if necessary, disqualify himself constitutes structural error, I would reverse Julien's conviction and remand this case for retrial before another judge. Therefore, I respectfully dissent.

At the outset, I note that I agree, based on a review of the record, both that Judge Schwartz was not actually biased in this case and that Julien's motion was insufficient to allege actual bias. The point is not whether former prosecutors or other former government employees can sit as fair and impartial judges. Of course they can, and many have done so with great distinction.

I write to explain my view of the fundamental need for open, honest, and fair judicial tribunals. To create and preserve such an environment, judges should strive to avoid any hint of partiality, as discussed below. It must not appear that a judge has an inappropriately close relationship to either of the parties appearing before him. If a criminal defendant discovers, after being convicted, that the judge who presided over his case had, only a few short weeks earlier, been a member of the office responsible for his prosecution and did not disclose this conflict, then that criminal defendant will of course question the impartiality of the judge. If a reasonable observer also has questions about the judge's ability to be impartial, reversible error has occurred.

### Judges Must Be Sensitive To The Appearance Of Partiality

A paramount concern of our judicial system is that judges be fair and impartial:

One of the most fundamental social interests is that the law shall be uniform and impartial. There must be nothing in its action that savors of prejudice or favor or even arbitrary whim or fitfulness.

Benjamin N. Cardozo, *The Nature of the Judicial Process* 112 (1921).[1] A judge who is free of bias is a necessary prerequisite to maintaining public confidence in the judicial system because "[j]udicial decisions rendered under circumstances suggesting bias or favoritism tend to breed skepticism, undermine the integrity of the courts, and generally thwart the principles upon which our jurisprudential system is based." Richard E. Flamm, *Judicial Disqualification: Recusal and Disqualification of Judges* § 5.4.1, at 150 (1996). Such an undesirable result would be detrimental to our society as a whole. We all benefit from judges who "exercise their judicial functions with integrity, impartiality, and independence ... [and who] inspire trust and confidence." Jeffrey M. Shaman et al., *Judicial Conduct and Ethics* § 1.01, at 2 (1990).

Judicial impartiality is so important to our system of justice that we become concerned if there is even an appearance of partiality, irrespective of whether the judge is, in fact, biased:

Since an appearance of bias may be just as damaging to public confidence in the administration of justice as the actual presence of bias, acts or conduct giving the appearance of bias should generally be avoided in the same way as acts or conduct that inexorably bespeak partiality.

Flamm, *supra,* § 5.4.1, at 150 (footnotes omitted). Thus, this court has stated, "Even where the trial judge is convinced of his own impartiality, the integrity of the judicial system is impugned when it appears to the public that the judge is partial." *People v.*

1. *See also, e.g., People v. Dist. Court,* 192 Colo. 503, 507, 560 P.2d 828, 831 (1977) ("Basic to our system of justice is the precept that a judge must be free of all taint of bias and partiality."); Jeffrey M. Shaman et al., *Judicial Conduct and Ethics* § 5.01, at 99 (1990) ("It is a fundamental principle of our legal system that judges should perform their duties impartially, free of personal interest or bias."); Alexander Hamilton ("The first duty of society is justice.") (quoted at www.equaljusticelibrary.org.cnchost.com/notablequotes.asp). Colorado has placed great importance on having judicial tribunals that appear to be, and are, fair. Indeed, Colorado judges enjoy national recognition for their perceived ability to be fair and impartial. *See* U.S. Chamber of Commerce State Liability Systems Ranking Study (Jan. 11, 2002) (ranking Colorado second of all fifty states for judicial impartiality).

*Botham,* 629 P.2d 589, 595 (Colo.1981); *see also, e.g., People v. Dist. Court,* 192 Colo. 503, 508, 560 P.2d 828, 831 (1977) ("Courts must meticulously avoid any appearance of partiality.").

The primary rationale for requiring disqualification on the basis of appearances "stems from the recognized need for an unimpeachable judicial system in which the public has unwavering confidence. Allegations of judicial bias may serve to erode this public confidence." Flamm, *supra,* § 5.4.1, at 148 (footnotes omitted); [2] *see also Johnson v. Dist. Court,* 674 P.2d 952, 956 (Colo.1984) ("Although the trial judge is convinced of his or her own impartiality, if it nonetheless appears to the parties or to the public that the judge may be biased or prejudiced, the same harm to public confidence in the administration of justice occurs."); *Nordloh v. Packard,* 45 Colo. 515, 521, 101 P. 787, 790 (1909) (stating that the impartial administration of justice is necessary "to retain public respect and secure willing and ready obedience to [courts'] judgments").

Avoiding even the appearance of bias also serves to assure parties to particular cases that they are, indeed, receiving a fair trial. Flamm, *supra,* § 5.4.2, at 151; *Williams v. Farmers Ins. Group, Inc.,* 720 P.2d 598, 601 (Colo.App.1985) ("It is fundamental to the vitality of our judicial system that litigants believe in the fairness of the process. An unfavorable decision perceived to be the result of an impartial consideration may be bearable, but an unfavorable decision tainted by even the appearance of partiality cannot be condoned."). It is often extremely difficult for a party to prove that a judge has a bias, even though she may reasonably suspect that one exists. Thus, a rule requiring a judge to recuse himself when a reasonable person might question his impartiality serves to protect both the parties to a case and the general public as a whole.

This is not to say that a judge who might reasonably appear to be biased is necessarily so. Again, I emphasize that I am confident that a wide range of persons, be they former prosecutors, public defenders, plaintiffs' attorneys, or defendants' attorneys, are extremely capable of conducting trials in a fair, impartial, and unbiased manner. Nonetheless, my belief in the need for unquestionably impartial judges is so great that I believe that it is vital that judges provide full disclosure of facts relevant to potential bias and, if necessary, recuse themselves whenever there is a reasonable question as to whether they are able to act in a fair manner.

I do not stand alone in my belief. The Due Process Clause of the Constitution safeguards the right to impartial judges and requires recusal of judges who are or who appear to be biased. *See, e.g., In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (stating that the Due Process Clause "may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, 'justice must satisfy the appearance of justice.' "). Consistent with this principle, a Colorado statute, procedural rules, and the Code of Judicial Conduct all provide guidelines to ensure that due process requirements are satisfied and that parties to civil and criminal cases are the beneficiaries of unassailably fair and impartial judges. *See, e.g.,* § 16–6–201, 6 C.R.S. (2001); Crim. P. 21(b); C.J.C. 3(C). Each of these sources of law mandates recusal of judges in particular circumstances. Because Canon 3(C)(1) of the Code of Judicial Conduct specifically addresses the requirement that a judge must disqualify herself on the basis of an appearance of partiality, I turn to a discussion of that canon here, keeping in mind the fundamental fairness concerns discussed above.

### The Colorado Code Of Judicial Conduct Mandates Recusal Whenever A Judge's Impartiality Might Reasonably Be Questioned

Canon 3(C)(1) mandates recusal whenever a judge's impartiality might reasonably be questioned, providing:

> nated so as to ensure that the decisions of the court are not only fair but appear to be so." Flamm, *supra,* § 5.4.1, at 149 (footnotes omitted).

---

**2.** Flamm also notes that "[i]t has been argued that public confidence in the judicial system, which is already quite fragile, requires that all doubt or suspicion about impartiality be jealously guarded against and, if possible, entirely elimi-

A judge should disqualify himself or herself in a proceeding in which the judge's impartiality *might reasonably be questioned,* including but not limited to instances where:

...

> (b) a judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it....

C.J.C. 3(C)(1)(b) (emphasis added). The commentary to Canon 3(C)(1)(b) explains that:

> A lawyer in a governmental agency does not necessarily have an association with other lawyers employed by that agency within the meaning of this subsection; a judge formerly employed by a governmental agency, however, should disqualify himself or herself in a proceeding *if the judge's impartiality might reasonably be questioned because of such association.*

(Emphasis added.)

Courts approach the question of appearance of bias from an objective perspective:

> The question of disqualification focuses on whether an objective assessment of the judge's conduct produces a reasonable question about impartiality, not on the judge's subjective perception of the ability to act fairly.

Abramson, *supra,* at 15.

The dispositive question "is not whether a judge is impartial in fact but whether a reasonable person—not knowing whether the judge is actually impartial—would be apt to question her impartiality." Flamm, *supra,* § 5.5, at 153–54 (footnotes omitted). This is "because a judge who is convinced of his own impartiality, as well as the purity of his motives, may nonetheless act in a manner that would lead a reasonable person to believe that he is biased." *Id.,* § 5.6.2, at 157 (footnotes omitted). Hence, whenever a reasonable person, apprised of all the relevant facts, might question the impartiality of the judge, the judge must be disqualified. Shaman, *supra,* § 5.25, at 143.

All reasonable doubt as to whether there is an appearance of impropriety must be resolved in favor of recusal. *Johnson,* 674 P.2d at 956 (concluding that the judge should have disqualified himself on the basis of an appearance of bias because it is the court's "duty to eliminate every semblance of reasonable doubt or suspicion that a trial by a fair and impartial tribunal may be denied"); *see also Bradshaw v. McCotter,* 785 F.2d 1327, 1329 (5th Cir.1986), *opinion on reh'g* 796 F.2d 100 (5th Cir.1986) ("The separation between the roles of the prosecutor and judge must be certain and inflexible."); Abramson, *supra,* at 16.

Whenever possible, a judge must consider whether her impartiality might reasonably be questioned before trial begins. If so, then the judge must take action sua sponte. *See, e.g.,* Leslie W. Abramson, *Studies of the Justice System: Judicial Disqualification Under Canon 3 of the Code of Judicial Conduct* 10 (2d ed. 1992) ("A judge can disqualify himself from hearing a case on his own motion.... Canon 3(C) is intended to be used by a judge at the start of each case as a checklist to assist in deciding whether at that point he should disqualify himself from any participation in the proceedings."); *see also United States v. Gipson,* 835 F.2d 1323, 1325 (10th Cir.1988) (stating that 28 U.S.C. § 455(a), the federal equivalent of Canon 3(C)(1), "imposes a sua sponte duty upon the judge to recuse himself if there is a reasonable factual basis for doubting the judge's impartiality").

Consistent with the fundamental fairness concerns that propel our judicial system, a judge who recognizes that her impartiality might reasonably be questioned must, at a very minimum, disclose to the parties all facts that suggest an appearance of bias. *See, e.g.,* Shaman, *supra,* § 5.26, at 146 ("[I]t is the obligation of a judge to disclose all facts which might be grounds for disqualification. It is not the duty of the parties to search out disqualifying facts about the judge.") (footnotes omitted). In my view, such disclosure is required if the judge wishes to preside over the case.

Early disclosure by the trial judge provides the judge with an opportunity to reassure the parties and the public that he can be fair and impartial, that he has sworn to and intends to uphold the law, and that he harbors no loyalties towards the prosecutor's office. It also assists the judge to make the transition from being an advocate for one party to being a neutral arbiter who favors neither party. The colloquy engendered by disclosure, between the court and the parties, will ease this transition.

Once a judge has disclosed his ties to the prosecution as a former employee of the district attorney's office, the judge may still be obligated to disqualify herself, absent waiver.[3] I believe that this approach, requiring both disclosure and recusal in some cases, is consistent with both Canon 3 and with the need to preserve the appearance of impartiality in our courts.

### The Trial Judge's Recent Ties To The District Attorney's Office Might Cause A Reasonable Person To Question His Impartiality

The question that this court must answer is whether Judge Schwartz's former association with the district attorney's office means that his impartiality might reasonably be questioned in this case, thus demonstrating that he should have disclosed this relationship and, if so requested, disqualified himself before Julien's trial had begun. This question, of how a reasonable person might respond to a particular situation, can only be answered through an examination of the specific facts and circumstances presented.

The majority, without considering how a reasonable person might react to the particular facts of this case, concludes that Judge Schwartz's impartiality could not reasonably be questioned. Instead of engaging in a particularized factual analysis, the majority

essentially creates a bright-line rule that a judge's impartiality can never reasonably be questioned as a result of her former employment at the prosecutor's office if the judge does not have personal knowledge about a case before her.

I believe that a reasonable person would consider numerous factors when deciding whether the impartiality of a judge might be questioned as a result of the judge's employment at the D.A.'s office while the defendant's case was pending. These would include but not be limited to the length of the judge's service with the prosecutor's office, the length of time that has passed since the judge left the prosecutor's office, the size of the prosecutor's office, the level of involvement that the judge had with the particular case while employed by the prosecutor's office, and the supervisory authority granted to the judge while employed by the prosecutor's office.[4] Each of these facts pertains to either the likelihood that the judge would have come into contact with information about a particular case before taking the bench and/or the degree of loyalty that might be perceived to be felt towards the attorney currently prosecuting the case. Considerations such as these might lead a reasonable person to question whether a judge might, consciously or unconsciously, be biased.

The majority considers only one of these factors: that Judge Schwartz states that he had no direct or supervisory involvement with, recollection of, or personal knowledge of Julien's case or its disputed evidentiary facts from his time at the prosecutor's office. While this fact is certainly important to determining both the actuality and the appearance of impropriety, it is by no means dispositive of the question of whether the judge's impartiality might reasonably be questioned.

In adopting this approach, the majority condenses what should be a detailed analysis

---

3. I recognize that the Code of Judicial Conduct is silent as to whether the parties may waive the requirement that a judge disqualify herself on the basis of an appearance of partiality. However, I believe that waiver should be permitted. *See, e.g.,* Shaman, *supra,* § 5.26, at 145 ("[W]here statutory language is silent regarding waiver, it usually will be assumed that disqualification is waivable."). *But see id.* at 146.

4. At least one court has suggested that the very need to inquire into the judge's level of involvement with a particular case in a prosecutorial capacity indicates that the case should be decided by a different judge. *State ex rel. Corbin v. Superior Court,* 155 Ariz. 560, 748 P.2d 1184, 1186 (1987). I do not go so far.

into a rule that fails to afford sufficient respect to our system's need to avoid the appearance of impropriety. The majority ignores the reality that a reasonable person might, depending on the circumstances, question the impartiality of a judge who was formerly employed by the prosecutor's office while a case that he now presides over was pending.

In my view, Judge Schwartz's impartiality might reasonably be questioned in this case. Judge Schwartz, who had worked at the local district attorney's office for approximately seven years, had left the employ of that office only five weeks before he began presiding over Julien's trial. Julien's case was investigated and its prosecution was initiated during Judge Schwartz's tenure at the district attorney's office. Further, while employed by the district attorney's office, he had supervisory powers over numerous attorneys. Judge Schwartz stated that he had no recollection of Julien's case and did not work on it while he was a prosecutor; however, this fact is not dispositive. On balance, these facts tilt in favor of a finding that a reasonable person might question Judge Schwartz's ability to be neutral, detached, and impartial.

I believe that Judge Schwartz should have confronted the issue of recusal before Julien's trial started. He should have disclosed the existence of his relationship with the district attorney's office to the defendant and his counsel. *See, e.g.,* ABA Standards for Criminal Justice 6–1.6(a) cmt. ("Whenever there could be an appearance of partiality caused by certain relationships or activities, full disclosure is the best policy."); *see also id.,* 6–1.9(a) cmt. ("Even in those cases where a prior prosecutorial role may not warrant recusal, the judge should disclose to the parties his or her former position."). At that point, the parties would have had the opportunity either to insist that Judge Schwartz recuse himself or to waive this requirement.

## The Majority's Reliance On Precedent Is Unpersuasive

The primary justification that the majority provides for the rule that it adopts is that the rule is consistent with out-of-state precedent.

I find the majority's reliance on and characterization of the cited precedents to be unpersuasive. Although there exists some case law support for the majority's position, rarely do those cases reach the question of whether a judge's impartiality might reasonably be questioned as a result of her former employment at the district attorney's office.

While the federal statute relating to disqualification of judges is similar to Colorado's Canon 3(C), the two are not identical. Like Canon 3(C), the federal statute provides a general rule that a judge must disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (2002). And like Canon 3(C), the statute then lists specific circumstances where disqualification is required. Under the federal statute, one of those circumstances is when the judge "has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding." 28 U.S.C. § 455(b)(3) (2002). Thus, federal courts, when analyzing a case under § 455(b)(3), consider whether the judge "participated as counsel [or] adviser," and not whether the judge's association with a government office might lead a reasonable person to question that judge's impartiality. I consider this distinction to be crucial and thus find federal cases that consider only § 455(b)(3), and not § 455(a), to be inapplicable here.

Hence, the majority's reliance on *United States v. Gipson,* 835 F.2d 1323 (10th Cir. 1988), and *Jenkins v. Bordenkircher,* 611 F.2d 162 (6th Cir.1979), is misplaced. Neither of those two cases contain any discussion of the appearance of bias or what factors might lead a reasonable person to question the impartiality of a judge. Indeed, the court in *Gipson* specifically noted that it was not considering § 455(a)'s appearance of partiality standard since the petitioner had not preserved that argument for appeal. *Gipson,* 835 F.2d at 1325.

The majority cites three federal cases for the proposition that under § 455(a), the federal statute requiring disqualification when a reasonable person might question a judge's impartiality, a former association with the

prosecutor's office by itself does not create a reasonable question as to the judge's impartiality: *United States v. Ruzzano*, 247 F.3d 688 (7th Cir.2001); *United States v. Di Pasquale*, 864 F.2d 271 (3d Cir.1988); and *Laird v. Tatum*, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972). I do not find these cases persuasive.

In *Ruzzano*, the court held that the § 455(a) recusal argument had been waived by the petitioner and concludes, in dicta, without analysis, and with citation to only *Di Pasquale*, that "[i]n any event, the fact that [Judge Conlon] was an AUSA [Assistant United States Attorney] during the prosecution, standing alone, does not require recusal under § 455(a)." *Ruzzano*, 247 F.3d at 694–95. Such limited analysis should not be considered persuasive.

In *Di Pasquale*, the Third Circuit based its rejection of the defendant's § 455(a) argument on the fact that the defendant failed to offer evidence to show that a reasonable person knowing all the circumstances would have harbored doubts concerning the judge's impartiality. *Di Pasquale*, 864 F.2d at 279. However, Colorado Canon 3(C)(1)(b), the canon relevant to these proceedings, does not place the burden of proof upon the defendant. Indeed, the judge must sua sponte disqualify himself if the requirements of the canon are met. Thus, it cannot seriously be

contended that *Di Pasquale* supports the majority's holding.

Finally, the majority relies on *Laird v. Tatum*, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50. In *Laird*, Justice Rehnquist explained his decision not to disqualify himself from that case. Nowhere in his discussion does he consider when a judge must recuse himself based on the appearance of bias; nor does he discuss what factors would lead a reasonable person to question a judge's impartiality. The word "reasonable" does not even appear in the case. *Laird* is essentially Justice Rehnquist's subjective explanation of why he was not, in actuality, biased and does not support the majority's argument that a judge must have personal knowledge about a case before a reasonable person could doubt the judge's impartiality.

The majority also states that a majority of states hold that a former association with the prosecutor's office, by itself, is not a sufficient basis for disqualification. Maj. op. at 1200. In large part, the state cases cited by the majority do not hold that there is no appearance of bias when a former prosecutor presides over a case that was pending during her tenure at the prosecutor's office, or that such facts could not lead a reasonable person to question such a judge's impartiality. Instead, the cases cited either employ different standards or ignore appearance questions and focus on whether actual bias was present.[5]

5. *See Payne v. State*, 48 Ala.App. 401, 265 So.2d 185, 191–92 (1972) (containing no discussion of the appearance of impropriety standard or what circumstances might lead a reasonable person to question a judge's impartiality; decided before the Code of Judicial Conduct was even developed); *Lofton v. State*, 57 Ark.App. 226, 944 S.W.2d 131, 135 (1997) (holding that the judge's refusal to recuse himself was not reversible error under the Code of Judicial Conduct because the defendant had not alleged that he was actually biased or prejudiced at trial); *People v. Burnett*, 73 Ill.App.3d 750, 29 Ill.Dec. 678, 392 N.E.2d 235, 238 (1979) (holding that a judge who was a former prosecutor was not required to disqualify himself because he had not acted "as counsel" in the case while employed by the prosecutor's office; no discussion of appearance standard or when impartiality might reasonably be questioned); *People v. Delongchamps*, 103 Mich.App. 151, 302 N.W.2d 626, 628 (1981) (containing no discussion of appearance standard or whether a reasonable person might have questioned the judge's impartiality); *State v. McNamara*, 212

N.J.Super. 102, 514 A.2d 63, 66–67 (App.Div. 1986) (containing no discussion of appearance standard or whether a reasonable person might have questioned the judge's impartiality because a state Supreme Court directive that provided a different standard controlled); *People v. Mitchell*, 137 Misc.2d 450, 521 N.Y.S.2d 639, 640–41 (County Court 1987) (containing no discussion of appearance standard or whether a reasonable person would have questioned the judge's impartiality); *Commonwealth v. Abu-Jamal*, 553 Pa. 569, 720 A.2d 121 (1998) (appellate judge refusing to disqualify himself because of lack of participation in the case while serving as prosecutor; no discussion of the appearance standard or whether a reasonable person might have questioned his impartiality); *Gamez v. State*, 737 S.W.2d 315, 318–20 (Tex.Crim.App.1987) (containing no discussion of appearance standard or whether a reasonable person might have questioned the judge's impartiality). The only case that the majority cites that directly supports its holding is *Owens v. State*, 13 S.W.3d 742, 757

Thus, I do not believe that the precedent on which the majority relies is as compelling or as clear-cut as the majority implies. Further, the majority fails to discuss how this case differs from cases that have required a judge who was formerly a district attorney to recuse himself because his impartiality could reasonably be questioned.[6] Some of those cases rely on the fact that the district attorney played a pro forma role in the prosecution of the case. *See, e.g., United States v. Arnpriester*, 37 F.3d 466, 467 (9th Cir.1994). The majority does not analyze these cases, instead choosing to adopt a rule that recusal is not required if the judge does not have personal knowledge of a case or actual participation in its prosecution. As explained above, I believe that Canon 3(C) demands consideration of all factors that might lead a reasonable person to question a judge's impartiality, including her level of involvement in a particular case as prosecutor.

### The Majority's Holding Is Doctrinally Irreconcilable With Colorado Precedent

Before turning to the question of remedy, I raise one final point. The judge whose impartiality that the majority assumes to be beyond question is the same person who would have been required to disqualify any prospective juror whose relationship to the case was even more attenuated than his own. In *People v. Macrander*, 828 P.2d 234 (Colo. 1992), this court held that the mother of a deputy district attorney not involved in the prosecution of the *Macrander* case must be disqualified from the jury. The jury disqualification statute provided that people of a particular relationship with an "attorney of record" would be excused for cause. *Id.* at 239. We construed the phrase "attorney of record" to refer to every deputy district at-

torney irrespective of their actual participation in any particular case. *Id.* at 241. We considered and rejected a contrary construction, stating that such a construction "would compromise the appearance if not the reality of fairness in a criminal prosecution and would weaken to a significant degree public trust and confidence in the criminal justice system." *Id.* at 242.

The majority dismisses *Macrander* in a footnote as irrelevant. It is irreconcilable and unacceptable to posit a rule of law that permits a judge to preside over a case while simultaneously disqualifying a juror from serving on the basis of an appearance of impropriety, when the circumstances demonstrate that the judge has a more direct relationship to the district attorney's office than the juror does.

### The Trial Judge's Failure To Disclose The Conflict And, If Requested, Recuse Himself Requires Reversal Of Julien's Conviction

In my view, the failure of the judge in this case to disclose his prosecutorial ties to the defendant, and to disqualify himself if so requested, must be characterized as "structural error." Structural error is defined as error that "affect[s] the framework within which the trial proceeds." *Blecha v. People*, 962 P.2d 931, 942 (Colo.1998) (internal quotation marks removed). It stands in contrast to "trial error," which is error that "occurs during presentation of the case to the jury and ... may therefore be quantitatively assessed in the context of other evidence presented." *Id.* (internal quotation marks removed). An appearance that a judge is not fair is not the sort of "trial error" that can be separated from the rest of the proceedings and considered in isolation. Instead, this

---

(Tenn.Crim.App.). In that case, the Tennessee court considered whether the judge's former employment created an appearance of impropriety and stated the specific reasons that led it to conclude that the judge's impartiality could not reasonably be questioned.

**6.** *See, e.g., United States v. Arnpriester*, 37 F.3d 466, 467 (9th Cir.1994); *Bradshaw v. McCotter*,

785 F.2d 1327, 1329 (5th Cir.1986), *opinion on reh'g* 796 F.2d 100 (5th Cir.1986); *Corbin*, 748 P.2d at 1185–86; *King v. State*, 246 Ga. 386, 271 S.E.2d 630, 633–34 (1980); *Frierson v. State*, 606 So.2d 604, 606 (Miss.1992). The majority does cite one such case, *Arnpriester*, but does not discuss why the outcome in that case was different than here.

appearance of impropriety infects the entire trial.

When structural error occurs, reversal is required. *Id.; see also* Flamm, *supra,* § 5.5, at 154 ("Generally speaking, where an appearance of bias—such that the judge's 'impartiality might reasonably be questioned' by a reasonable person—can be shown, any de-cision rendered by that judge will be subject to reversal.").

I am authorized to say that Justice MARTINEZ joins in this dissent.