The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 11, 2020

## 2020COA91

**No. 17CA2237, *People v. Mentzer* — Judges — Code of Judicial Conduct — Disqualification; Criminal Procedure — Substitution of Judges**

A division of the court of appeals considers whether the trial judge, a former member of the district attorney's office, erred by not recusing from this criminal case. The division concludes that the judge should have recused because she served in a supervisory capacity over the attorneys who investigated or prosecuted this case at the time they filed the charges against the defendant. Therefore, the division reverses the judgment of conviction and remands for a new trial before a different judge.

The division also holds that the defendant did not clearly and unequivocally invoke his right to counsel during a custodial

interrogation.  So, his statements made during that interrogation

may be admitted at the new trial.

Court of Appeals No. 17CA2237
Larimer County District Court No. 13CR1643
Honorable C. Michelle Brinegar, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jarold Alan Mentzer,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE NAVARRO
Fox and Brown, JJ., concur

Announced June 11, 2020

Philip J. Weiser, Attorney General, Melissa D. Allen, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Antony Noble, Alternate Defense Counsel, Taylor Ivy, Alternate Defense Counsel, Lakewood, Colorado, for Defendant-Appellant

¶ 1    Defendant, Jarold Alan Mentzer, appeals the judgment of conviction entered on jury verdicts finding him guilty of internet luring of a child and internet sexual exploitation of a child. We hold that the trial judge, a former prosecutor, should have recused herself from this case because she had served in a supervisory capacity over the attorneys who investigated or prosecuted this case at the time they filed the charges against Mentzer. Therefore, we reverse and remand for a new trial.

## I.    Factual and Procedural History

¶ 2    Mentzer's convictions stem from sexually explicit messages and images sent to Loveland Police Detective Brian Koopman in October 2013. Detective Koopman, posing as a fourteen-year-old girl, responded to a lewd advertisement for a "casual connection" on Craigslist. He gathered evidence from the ensuing internet-based correspondence, obtained a warrant, and arrested Mentzer.

¶ 3    Mentzer's case was tried to a jury, which found him guilty as charged. *See* § 18-3-306(1), (3), C.R.S. 2019 (luring); § 18-3-405.4(1), C.R.S. 2019 (exploitation). The trial court sentenced him to sex offender intensive supervised probation for an indeterminate period of ten years to life and to sixty hours of community service.

1

## II. Recusal of Trial Judge

¶ 4 Mentzer contends that the trial judge erred by denying his motion for disqualification. He argues that she was obligated to recuse herself because, before joining the bench, she had served in a supervisory capacity over the attorneys who conducted the investigation or prosecution of his case. Reviewing de novo, we agree. *See People v. Roehrs*, 2019 COA 31, ¶ 7.

### A. Disqualification Principles

¶ 5 "We start with the precept, basic to our system of justice, that a judge must be free of all taint of bias and partiality." *People v. Julien*, 47 P.3d 1194, 1197 (Colo. 2002). Colorado law offers "interrelated guideposts for judicial disqualification." *Schupper v. People*, 157 P.3d 516, 519 (Colo. 2007); *Roehrs*, ¶¶ 8-11. We discuss only those relevant here.

¶ 6 First, section 16-6-201(1)(d), C.R.S. 2019, and Crim. P. 21(b)(1)(IV) provide that a judge shall be disqualified when she is "in any way interested or prejudiced with respect to the case, the parties, or counsel."

¶ 7 Second, Canon 2 of the Colorado Code of Judicial Conduct states that "[a] judge shall perform the duties of judicial office

2

impartially, competently, and diligently." Applying that canon to disqualification, Rule 2.11(A) states as follows:

> A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
>
> . . . .
>
> (5) The judge:
>
> (a) . . . was associated with a lawyer who participated substantially as a lawyer in the matter during such association[.]

C.J.C. 2.11(A); *see Roehrs*, ¶ 10. Under the code, "impartiality" means the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." *Roehrs*, ¶ 10 n.4 (quoting C.J.C., Terminology).

¶ 8 The second guidepost identified above does not require a judge to recuse herself simply because she was employed by the district attorney's office when the criminal case at issue was initiated. *Schupper*, 157 P.3d at 519-20; *cf. Julien*, 47 P.3d at 1200 (knowledge of governmental attorneys is not imputed to other attorneys in that office). On the other hand,

3

> a judge must disqualify himself or herself . . . if facts exist tying the judge to personal knowledge of disputed evidentiary facts concerning the proceeding, *some supervisory role over the attorneys who are prosecuting the case,* or some role in the investigation and prosecution of the case during the judge's former employment.

*Julien,* 47 P.3d at 1198 (emphasis added); *accord People v. Flockhart,* 2013 CO 42, ¶ 49.

¶ 9 A motion for disqualification must be supported by two affidavits from credible people not related to the defendant, stating facts showing grounds for disqualification. § 16-6-201(3). When ruling on such a motion, "a judge must accept as true the factual statements contained in the motion and affidavits." *Julien,* 47 P.3d at 1199. The court must then determine whether the statements allege legally sufficient facts to warrant disqualification. *Roehrs,* ¶ 12.

### B. Application

¶ 10 Mentzer filed two affidavits in support of his motion for substitution of the trial judge.[1] The motion and affidavits alleged

---

[1] For the first time at oral argument, the People claimed that one of the affidavits was deficient. We do not resolve this claim, for two

that (1) the judge served in the Larimer County District Attorney's Office from 1991 to December 2013; (2) she "supervised" and "directed" the "sexual assault and crimes against children" unit; and (3) she supervised that unit on November 12, 2013, when an attorney in that unit filed the charges against Mentzer in this case.

¶ 11 During a hearing on this motion, the prosecutor noted that the trial judge's name did not appear on the charging document. But the judge confirmed that she worked in the district attorney's office when this case was filed. She said, however, that she had "no memory" of this case. She explained to Mentzer,

> I don't think I ever had any involvement in filing the charges against you, in any of the investigation that was done prior to charges being filed. I just simply have no information and no involvement in your case, ever, other than being employed at the DA's office. . . . [I]f I had been involved in your investigation or, you know, making charging decisions, then my decision might be different. But that's not the case here.

As a result, the judge denied the motion.

---

reasons: (1) we do not entertain issues first raised at oral argument, *see People v. Becker*, 2014 COA 36, ¶ 23; and (2) the prosecution did not object on this basis below and, thus, Mentzer had no opportunity to cure the alleged defect, *see People v. Roehrs*, 2019 COA 31, ¶¶ 14-15.

¶ 12    We respectfully disagree with the judge's decision. The motion to disqualify and affidavits are legally sufficient to warrant disqualification because they allege facts from which it may be reasonably inferred that she had served "in a supervisory capacity over attorneys conducting the investigation or prosecution" of this case (e.g., the attorney who filed the charges). *Julien*, 47 P.3d at 1200; *see Roehrs*, ¶ 12. As our supreme court has recognized, serving in such a supervisory capacity constitutes personal participation in the prosecution of the case. *Julien*, 47 P.3d at 1200.[2]

¶ 13    Despite the People's claim, the ultimate holding of *Julien* — the judge at issue was not disqualified — is not contrary to our conclusion. The judge in *Julien* had served as one supervising attorney and team leader, among multiple supervising attorneys, in the district attorney's office. *See id.* at 1196. The judge, however, had not been "a team leader of anybody who in fact was in the

_____

[2] To hold otherwise — for instance, to require recusal only when the judge actually contributed to the charging decision — would duplicate other grounds for disqualification, such as when "facts exist tying the judge to . . . some role in the investigation and prosecution of the case during the judge's former employment." *People v. Julien*, 47 P.3d 1194, 1198 (Colo. 2002).

6

case." *Id.* at 1196, 1200. Indeed, the judge stated expressly that he had not supervised anyone involved in the case. *Id.* at 1196. In contrast, the motion and affidavits here permit the reasonable inference that the trial judge had directed and supervised the specific unit in the office responsible for investigating and prosecuting Mentzer's case. *Cf. In re Bulger*, 710 F.3d 42, 49 (1st Cir. 2013) (recognizing that a direct supervisor, "such as Chief of Criminal Division, is more immediately accountable for the actions of his own section than the United States Attorney is," with a correspondingly immediate difficulty in remaining impartial toward a defendant).

¶ 14    Therefore, although the judge had no memory of this case, the motion and affidavits indicate that she had supervised the attorney who investigated and filed it. That is enough to require disqualification. *See also United States v. Arnpriester*, 37 F.3d 466, 467-68 (9th Cir. 1994) (disqualifying judge who had supervisory responsibility in the United States Attorney's Office for the investigation and prosecution of the crimes at issue), *cited in Julien*, 47 P.3d at 1198; *State v. Ellis*, 206 P.3d 564, 564 (Mont. 2009) ("As Attorney General, McGrath oversaw and approved the filing of all

criminal appeals by the State of Montana.  We conclude that this oversight and approval constitutes 'personal and substantial participation' . . . ."); *In re K.E.M.*, 89 S.W.3d 814, 828 (Tex. App. 2002) (recognizing that grounds for a judge's disqualification include "supervisory authority by the judge as prosecutor at the time the case was investigated, prosecuted, or adjudicated over attorneys who actually investigated or prosecuted the same case or a case arising out of the same set of operative facts").

¶ 15     We emphasize that we do not discern actual bias on the trial judge's part.[3]  But, "[e]ven if the judge is entirely convinced of her own impartiality, she must take care not to allow the justice system to be impugned by an appearance of partiality." *Roehrs*, ¶ 12.  This concern must be given the "'highest consideration . . .' to secure the confidence of litigants and maintain public respect for the courts." *Id.* (quoting *Smith v. Beckman*, 683 P.2d 1214, 1216 (Colo. App. 1984)).

¶ 16     Given the appearance of bias resulting from the judge's supervisory role over the attorney who filed the charges against

---

[3] Hence, to the extent Mentzer asserts that the judge exhibited actual bias against him, we reject that assertion.

8

Mentzer at the time the charges were filed, we must reverse the judgment and remand for a new trial. *See id.* at ¶ 34 (reversing a conviction due to the appearance of judicial bias).

### III. Invocation of the Fifth Amendment Right to Counsel

¶ 17    Because the issue is likely to recur on remand, we address Mentzer's claim that his inculpatory statements to Detective Koopman should not have been admitted into evidence. A different judge denied Mentzer's motion to suppress those statements before this case was reassigned to the trial judge. So, the recusal issue has no bearing on the suppression ruling.

¶ 18    Mentzer contends that his statements should have been suppressed because he made them after he invoked his right to counsel and the detective did not stop the interrogation. We are not persuaded.

#### A. Standard of Review

¶ 19    Whether a trial court erred by refusing to suppress evidence presents a mixed question of fact and law. *People v. Leyba,* 2019 COA 144, ¶ 12 (*cert. granted* May 26, 2020). We defer to the court's factual findings if they are supported by the record but review the court's legal conclusions de novo. *Id.* Where the statements in

question are recorded, and there are no disputed, relevant facts, we are in as good a position as the trial court to decide the issue. *Id.*

## B. Governing Law

¶ 20 The Fifth Amendment privilege against self-incrimination includes the right to have counsel present during custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444, 469-73 (1966); *People v. Kutlak*, 2016 CO 1, ¶ 14. Law enforcement officers must immediately cease questioning a suspect who has clearly asserted the right to have counsel present during a custodial interrogation. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981); *Kutlak*, ¶ 14.

¶ 21 Even so, the *Edwards* rule should not be applied to prevent police questioning merely "when the suspect *might* want a lawyer." *Kutlak*, ¶ 23 (quoting *Davis v. United States*, 512 U.S. 452, 462 (1994)). As the Supreme Court explained in *Davis*, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." 512 U.S. at 459; *accord Kutlak*, ¶¶ 14-17.

10

> [W]e assess[] whether a request for counsel is ambiguous by considering the totality of the circumstances, including such factors as the words spoken by the interrogating officer; the words used by the accused in referring to counsel; the officer's response to the accused's reference to counsel; the speech patterns of the accused; the demeanor and tone of the interrogating officer; the accused's behavior during interrogation; and the accused's youth, criminal history, background, nervousness or distress, and feelings of intimidation or powerlessness.

*Kutlak*, ¶ 24.

### C.    Additional Procedural History

¶ 22    After arresting Mentzer, Detective Koopman advised him of his rights under *Miranda.* Mentzer said he "absolutely" wanted to talk with the detective. Their conversation was audio-recorded, and about twenty-seven minutes of it were admitted into evidence and played for the jury. The appellate record contains only the redacted recording admitted into evidence.

¶ 23    About five minutes in, Mentzer asked, "Do I need to seek legal representation?" Detective Koopman replied, "If you're asking if you need to see a lawyer. Here's the thing — that is a choice that you have to make on your own." Mentzer then asked whether he might face criminal charges. The detective told him, "It's quite possible,

11

yes." Mentzer said he wanted to understand why. In the ensuing conversation, he made incriminating admissions, including admitting to posting ads on the "casual encounters" section of Craigslist and using an email address that was used in the offenses.

¶ 24 Later, Mentzer asked, "Should I be thinking about jail time? Or getting representation, sir?" After a brief pause caused by the detective's phone sounding alerts, the detective started to answer him, but Mentzer interrupted to ask more questions about the case. Mentzer made more incriminating statements. Eventually, he said he wanted to stop talking, and Detective Koopman ended the interrogation.

¶ 25 In denying his pretrial motion to suppress the statements, the trial court found that Mentzer's two references to "representation" were "equivocal and ambiguous" and "not clear invocations of the right to counsel."

### D. Analysis

¶ 26 Like the trial court, we conclude that, under the totality of the circumstances, Mentzer's two references to "representation" were ambiguous or equivocal references to his right to counsel. Those allusions to counsel would not have been understood by a

reasonable officer as a clear request for an attorney. So, Detective Koopman was not required to stop questioning Mentzer.

¶ 27    Indeed, in *Kutlak* the supreme court determined that an arguably stronger request for counsel was too ambiguous to require the police to cease questioning. The defendant said he had a lawyer on retainer and asked the police, "[C]an we get him down here *now*, or . . . ?" *Kutlak*, ¶¶ 4, 27. The court concluded that the defendant's question and demeanor suggested that "he was merely inquiring how long it might take to acquire counsel's presence." *Id.* at ¶ 27. The court further reasoned that, while the defendant's statements could be construed as a request for counsel, "an equally logical inference from [his] statements is that he was weighing his options and asked a question to help him decide whether to request his counsel's presence. As such, his statements were ambiguous." *Id.*

¶ 28    Likewise, Mentzer did not unambiguously request counsel; instead, he asked for the detective's opinion about whether he needed counsel. And, like the defendant in *Kutlak*, Mentzer's speech patterns, demeanor, and tone reflected a "general uncertainty" and nervousness. *Id.* at ¶ 27. These facts tend to

show that Mentzer was undecided about whether he wanted to invoke his right to counsel and he sought further information to help him decide whether to request counsel. *See id.*[4]

¶ 29    Moreover, although Mentzer might not have had prior experience with the criminal justice system, he is a native English speaker who worked in electronics manufacturing as a machine operator and had leadership tasks. So, as in *Kutlak,* any ambiguity in Mentzer's statements "likely did not stem from confusion or any language barrier, but rather, from indecision with respect to his right to counsel." *Id.* at ¶ 30; *see also Davis*, 512 U.S. at 462 (holding that the defendant's remark — "Maybe I should talk to a lawyer" — was not a request for counsel).

¶ 30    We acknowledge Mentzer's claim that the detective tricked or manipulated him into making incriminating statements by responding to his questions in such a way as to "keep him talking."

---

[4] The supreme court also noted in *People v. Kutlak*, 2016 CO 1, ¶ 27, that the defendant said he was going to "take a dice roll" and continue the interview, which indicated his conscious decision not to invoke his right to counsel. Here, while Mentzer did not mention rolling dice, he consciously decided to ask questions about the facts of this case immediately following the detective's explanation that seeking counsel was entirely Mentzer's decision.

Because Mentzer did not clearly invoke his right to counsel, however, the detective was permitted to continue questioning him. Moreover, the detective's responses that were allegedly designed to keep Mentzer talking were not made in reply to his reference to counsel but in response to his questions about why he might be charged criminally and about the facts of the case. Mentzer's questions were consistent with an attempt to figure out whether he should seek an attorney. In sum, then, his questions indicated only that he *might* want a lawyer. *See Kutlak*, ¶ 23.

¶ 31 We are not persuaded otherwise by Mentzer's reliance on *People v. Fish*, 660 P.2d 505 (Colo. 1983), *abrogated on other grounds by People v. Hopkins*, 774 P.2d 849, 852 (Colo. 1989), and *People v. Wood*, 135 P.3d 744 (Colo. 2006).

¶ 32 *Fish* is factually distinguishable and legally obsolete. There, the defendant, while being advised of his *Miranda* rights, asked officers if he needed an attorney. *Fish*, 660 P.2d at 507. One or both of the officers said "no." *Id.* at 507, 509. The supreme court found it significant that the defendant believed he was working for the sheriff because he had an existing "working relationship" with the investigating officers. *Id.* at 509. Considering the totality of

these circumstances, the supreme court concluded that "the defendant's question was sufficient to put the officers on notice that the defendant intended to exercise his right to counsel . . . ." *Id.* In contrast, Detective Koopman never advised Mentzer that he did not need an attorney; the detective said that whether to seek an attorney was Mentzer's decision alone. And there was no prior working relationship between Mentzer and the detective such that Mentzer could believe he was working for the police.

¶ 33 Furthermore, and perhaps more importantly, at the time *Fish* was decided, "[a]n *ambiguous* indication of an interest in having counsel" was sufficient to require the cessation of further questioning. *Id.* (emphasis added). Our supreme court has since expressly overruled that proposition. *Kutlak,* ¶¶ 18-23. Thus, the *Fish* court's determination that the defendant's question was sufficient to invoke his right to counsel rests on an outdated legal principle that we cannot follow. *See Kutlak,* ¶ 23 ("*Davis* made clear that the *Edwards* rule should not be applied 'to prevent police questioning when the suspect *might* want a lawyer.' In short, '[u]nless the suspect actually requests an attorney, questioning may

continue.' To the extent our prior cases suggest otherwise, they are hereby overruled.") (citations omitted).

¶ 34 In *Wood*, the defendant told a detective, "I definitely need a lawyer, right?" 135 P.3d at 747. On appeal the People conceded that this constituted an invocation of the right to counsel, and the supreme court accepted the concession without further analysis. *Id.* at 752. In doing so, the court cited only *People v. Adkins*, 113 P.3d 788 (Colo. 2005), which was later overruled in *Kutlak*. *See Kutlak*, ¶¶ 20-23. Under these circumstances, we do not believe *Wood* provides guidance on the issue before us. Instead, we must apply *Kutlak*.

¶ 35 Given all this, we conclude that the trial court properly denied the motion to suppress.

## IV. Conclusion

¶ 36 The judgment is reversed, and the case is remanded for further proceedings before a different judge that are consistent with this opinion.

JUDGE FOX and JUDGE BROWN concur.